**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THERESA PIEKARSKI, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12-cv-07346 |
| v. | ) ) | Magistrate Judge Schenkier |
| AMEDISYS ILLINOIS, LLC, and AMEDISYS HOLDING LLC, | ) ) ) | |
| Defendants. | ) | |

**INDEX OF EXHIBITS TO
MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION TO CERTIFY A COLLECTIVE ACTION
UNDER SECTION 216(B) OF THE FLSA SOLELY FOR SETTLEMENT
PURPOSES; FOR APPROVAL OF AN OPT-IN SETTLEMENT; FOR
APPOINTMENT OF SETTLEMENT ADMINISTRATOR; AND FOR APPROVAL
OF AWARDS OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS**

Stipulation and Settlement Agreement ...........................................................................................A

- Notice of Settlement, Consent Form and W9 Tax Form ....................................................1

- Reminder Notice, Consent Form and W9 Tax Form ..........................................................2

- Class List ............................................................................................................................3

Proposed Order .................................................................................................................................B

Declaration of Maureen A. Salas ....................................................................................................C

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **THERESA PIEKARSKI, on behalf of herself and others similarly situated,** | : : : | |
| Plaintiffs, | : : | Civil Action No.: 1:12-cv-07346 |
| v. | : : | |
| **AMEDISYS ILLINOIS, LLC, and AMEDISYS HOLDINGS, LLC,** | : : : | July 28, 2016 |
| Defendants. | : : : : | |

**STIPULATION AND SETTLEMENT AGREEMENT**

Named Plaintiff Theresa Piekarski, along with Opt-in Plaintiffs Edward Thelen and Radha Godambe, individually and on behalf of all members of the Settlement Class defined herein, whom plaintiffs sought to represent on a class and collective action basis in this action, and their counsel of record, and defendants Amedisys Illinois, LLC and Amedisys Holdings, LLC, and their counsel of record, and subject to the terms and conditions hereof and final approval by the Court, hereby enter into this stipulation of settlement ("Agreement"). This settlement is intended to fully, finally, and forever compromise, release, resolve, discharge, and settle the released claims subject to the terms and conditions set forth in this Agreement. The instant action shall be dismissed with prejudice upon final approval of this settlement by the Court.

## I.    RECITALS AND BACKGROUND

### A.    The Nature of the Instant Action and Claims Raised

Defendants operate in Illinois, and across the country, to provide post-acute care to individuals recovering from operations or injuries, or managing a chronic disease. During the relevant period, Defendants' Home Health Division has employed clinicians in Illinois in several different specialties, including registered nurses, physical therapists, occupational therapists, speech language pathologists, and medical social workers, to provide in-home care.

Plaintiffs worked as clinicians in Defendants' Home Health Division. Plaintiffs claim they and other similarly situated Illinois home health clinicians are entitled to unpaid overtime wages, statutory penalties, and attorneys' fees and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the analogous Illinois Minimum Wage Law ("IMWL") 820 ILCS 105-1, *et seq.* Plaintiffs claim that Defendants misclassified "per-visit" home health clinicians in Illinois as exempt from overtime because their pay violated the U.S. Department of Labor rules for fee-basis compensation, 29 C.F.R. § 541.605. (Dkt. Nos. 1.) Plaintiffs also assert that their claims include unpaid overtime wages, statutory

penalties, and attorneys' fees and costs during time periods when Defendants treated them and other per-visit clinicians as "non-exempt" and overtime eligible, as they allege Defendants required them to work "off the clock" and/or did not use the appropriate methodology for computing their overtime pay, thus, denying them full pay for all hours worked, including overtime.

Defendants deny Plaintiffs allegations under both the FLSA and IMWL and assert that they have paid Plaintiffs and all other allegedly similarly situated individuals whom Plaintiffs seek to represent appropriately and in full compliance with applicable laws.

**B.      Procedural History of the Instant Action**

1.      Named Plaintiff Theresa Piekarski filed this case on September 13, 2012.  (Dkt. No. 1.)  She immediately moved for certification pursuant to Fed. R. Civ. P. 23 of her IMWL claims, but withdrew that motion subject to a stipulation whereby Defendants agreed not to try to moot plaintiffs' class claims by making a settlement offer to Named Plaintiff Theresa Piekarski.  (Dkt. Nos. 6, 26.)  Shortly thereafter, in response to a motion by Defendants to transfer or stay this case, the Court stayed the case pending proceedings in the first-filed *Tomkins v. Amedisys, Inc.*, No. 3:12-CV-01082 (WWE) (D. Conn. July 25, 2012) (previously *Cook v. Amedisys*).  (Dkt. Nos. 19, 49.)  Subsequently, while litigation of the *Tomkins* matter proceeded, activities in this action largely were confined to discovery related to Named Plaintiff Theresa Piekarksi's eventual request for conditional certification.  To that end, the Named Plaintiff Theresa Piekarski and Defendants responded to written discovery requests, exchanged documents, and Defendants produced timekeeping and payroll data for Named Plaintiff Theresa Piekarski and anonymized timekeeping and payroll data for sample limited time periods for putative class members.  Defendants also deposed Named Plaintiff Theresa Piekarski.

2.      Opt-in Plaintiffs Edward Thelen and Radha Godambe filed consents to participate in Named Plaintiff Theresa Piekarski's FLSA claims on April 1, 2014 and September 14,

2015, respectively. (Dkt. Nos. 117, 135).

       3.     When the parties to the first-filed *Tomkins* reached a settlement in July 2015, before that matter had resolved the issues relevant to this case regarding dispositive motions and the propriety of class or collective treatment, Defendants approached Plaintiffs' Attorneys to determine if Plaintiffs were interested in exploring whether there was a possibility of settlement before the stay was lifted and this case proceeded into its next, more active phase. Plaintiffs agreed, and the Parties entered into a formal mediation agreement on December 18, 2015. Consistent with that agreement, Defendants provided Plaintiffs' Attorneys with time and payroll data for all putative class and collective action members.

       4.     Following an exchange of confidential position statements, on April 18, 2016, the Parties and their counsel engaged in an all-day mediation in Chicago, Illinois with neutral third-party mediator, Mr. Michael Dickstein. As a result of that mediation, the Parties reached a mutually agreeable settlement of the Litigation, as explained herein.

### C.     Parties' Statements and Recognition of the Benefits of Settlement

#### 1.     Plaintiffs' statement

Plaintiffs believe the claims asserted in the Litigation have merit under the FLSA and the IMWL. However, Plaintiffs recognize the cost and delay of continued proceedings necessary to prosecute the instant action against Defendants through conditional certification, discovery, class certification/decertification, dispositive motions, trial, and appeal. Plaintiffs have also taken into account the uncertain outcome and the risk of loss in any litigation, especially in a complex collective/class action such as this. Plaintiffs believe that the settlement set forth in this Agreement confers substantial benefits on Plaintiffs and potential Participating Class Members. Based on their evaluation, Plaintiffs have determined that the settlement is in the best interest of the Named

Plaintiff, the Opt-in Plaintiffs, and the other members of the putative Settlement Class.

## 2. Defendants' statement

Defendants deny each and all of the claims alleged by Plaintiffs in the Litigation. Defendants expressly deny any and all charges of wrongdoing or liability alleged in the instant action. To the contrary, Defendants contend that, in compliance with applicable state and federal laws, their per-visit clinicians in Illinois have been paid all wages due. Because Defendants believe they have complied with their obligations under the FLSA and state law, including the IMWL, Defendants believe Plaintiffs' claims for unpaid wages, liquidated damages, statutory penalties, pre-judgment interest, attorneys' fees, and costs will fail. Defendants also deny that the asserted claims are appropriate for collective treatment under 29 U.S.C. § 216(b) or class treatment under Fed. R. Civ. P. 23, except for the limited purposes of settlement. Nevertheless, Defendants have taken into account the uncertainty and risks inherent in any litigation and the fact that the conduct of the Litigation would be protracted and expensive. Defendants, therefore, have determined it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## II.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs (for themselves and the Settlement Class defined below) and Defendants, by and through their respective attorneys, that, subject to the approval of the Court, the instant action will be finally and fully compromised, released, resolved, discharged, and settled, and will be dismissed with prejudice, subject to the terms and conditions of this Agreement, as follows:

### A.     Definitions

As used throughout this Agreement, the following terms have the meanings specified below:

1.     **"Check Cashing Period"** means period of 180 calendar days that begins on the date that the Settlement Administrator makes the initial Settlement Payments by U.S. mail to any Plaintiffs or Participating Class Members. The beginning and end dates of this time period are the same for all Plaintiffs and Participating Class Members, regardless of whether any individual Plaintiff or Participating Class Member receives his or her Settlement Payment subsequent to the start of this time period.

2.     **"Defendants"** means Amedisys Illinois, LLC and Amedisys Holdings, LLC, including their past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations.

3.     **"Effective Date"** means the date by which all of the following have occurred: (i) this settlement has received approval from the U.S. District Court for the Northern

6

District of Illinois ("Court"), or any other court taking jurisdiction over this Litigation, as defined herein, in a form substantially identical to the form presented in this Agreement with respect to all material terms; (ii) the period for appealing the Court's Order Granting Approval expires without an appeal being filed or, if such an appeal is filed, the date on which the appeal is finally resolved, including any decision by the United States Supreme Court, and (iii) the period for any Federal or State official to intervene in the Litigation under the Class Action Fairness Act expires without such a Federal or State official intervening, or if such a Federal or State official intervenes, the date on which such intervention is finally resolved. To the extent any appeal results in the settlement being found to be invalid or the approval order not being affirmed on appeal in a form substantially identical to the form found in this Agreement with respect to all material terms, or the intervention of a Federal or State official in the Litigation under the Class Action Fairness Act results in the Court's approval of the settlement being rescinded or the settlement being approved in a form not substantially identical to the form found in this Agreement with respect to all material terms, this Agreement will be null and void for all purposes in its entirety.

4. **"Gross Settlement Amount"** refers to $766,000.00, which is the total and maximum amount Defendants will be required to pay under this settlement to completely resolve and settle the claims against Defendants in the Litigation, except that in addition to the Gross Settlement Amount, Defendants will pay their share of employer payroll taxes associated with payments to Plaintiffs and Participating Class Members pursuant to this Agreement that are attributable to back wages. The Gross Settlement Amount expressly includes, but is not necessarily limited to, the following elements: (i) cash Settlement Payments to Plaintiffs and Participating Class Members, as described in this Agreement; (ii) Service Awards, as defined

herein; (iii) Plaintiffs' Attorneys' Fees, as defined herein; (iv) Plaintiffs' Litigation Expenses, as defined herein; and (v) Settlement Expenses, as defined herein.

5. **"Litigation"** refers to the civil action filed on September 13, 2012, in the U.S. District Court for the Northern District of Illinois, which is styled as *Piekarski, et al. v. Amedisys Illinois, LLC, et al.*, Case No. 1:12-cv-07346.

6. **"Motion for Approval"** refers to the motion for approval of this settlement and its supporting papers, to be filed by Plaintiffs in accordance with this Agreement.

7. **"Named Plaintiff"** refers to Theresa Piekarski, the plaintiff who initiated the Litigation by filing a complaint against Defendants in the U.S. District Court for the Northern District of Illinois.

8. **"Notice of Settlement"** refers to the official notice of settlement of collective action, and accompanying consent to join settlement and release form, and I.R.S. Form W-9, to be approved by the Court in the forms, or substantially in the forms, attached hereto as Exhibit 1.

9. **"Notice Period"** means the period of 60 calendar days following the mailing and emailing of the Notice of Settlement, during which the Participating Class Members shall postmark, email, or fax, the required consent forms to the Settlement Administrator, or the period of 14 business days from the date the last deficiency notice regarding the required consent form is mailed to a member of the Settlement Class, as described in Part II.K.3, *infra*, whichever is later.

10. **"Opt-in Plaintiffs"** means Edward Thelen and Radha Godambe who, pursuant to 29 U.S.C. § 216(b), previously filed written consents with the U.S. District Court for

the Northern District of Illinois in the Litigation, asking to participate in Plaintiffs' claims in the Litigation under the FLSA as party plaintiffs.

11. **"Order Granting Approval"** refers to the future order or statement of decision in the Litigation, if any, granting approval of this settlement, including any request for awards of Plaintiffs' Attorneys' Fees, Plaintiffs' Litigation Expenses, and/or Service Awards.

12. **"Participating Class Members"** means those persons who are members of the Settlement Class, defined below, and who timely submit a completed written consent to join the settlement in accordance with the procedures described herein in Parts II.K.3 and II.L, *infra*, associated with the Notice of Settlement.

13. **"Plaintiffs"** means Named Plaintiff Theresa Piekarski and Opt-in Plaintiffs Edward Thelen and Radha Godambe, and their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

14. **"Plaintiffs' Attorneys"** means the attorneys representing Plaintiffs in the Litigation, Werman Salas P.C., 77 West Washington Street, Suite 1402, Chicago, IL 60602.

15. **"Plaintiffs' Attorneys' Fees"** refers to the fee amount to be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction over the Litigation, which shall not exceed $250,000.00.

16. **"Plaintiffs' Litigation Expenses"** means the litigation costs and expenses, incurred by Plaintiffs in connection with the Litigation, not to exceed $15,000.00, which shall be paid to Plaintiffs' Attorneys under the terms of this Agreement, as authorized by the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction over the Litigation. In agreeing to this award of litigation costs and expenses as part of this settlement, Defendants do

9

not concede that any or all such costs and/or expenses would have been recoverable by Plaintiffs in the Litigation even if they had prevailed.

17.     **"Parties"** means Plaintiffs and Defendants, as defined herein, collectively.

18.     **"Reminder Notice"** refers to the official supplemental notice of settlement of collective action, and accompanying consent to join settlement and release form and I.R.S. Form W-9, to be approved by the Court in the form, or substantially in the form, attached hereto as Exhibit 2, which shall be distributed via email and First Class U.S. Mail 30 days following the issuance of the Notice of Settlement to individuals who have not submitted a consent form, as described in Part II.K.2, *infra*.

19.     **"Revised Gross Settlement Amount"** refers to the portion of the Gross Settlement Amount available for distribution as cash Settlement Payments to Plaintiffs and Participating Class Members, as described in Parts II.H and II.Q.1, *infra*. The Revised Gross Settlement Amount is equal to Gross Settlement Amount less: (i) Service Awards, as described herein; (ii) Plaintiffs' Attorneys' Fees, as described herein; (iii) Plaintiffs' Litigation Expenses, as described herein; (iv) Settlement Expenses, as defined herein; and (v) any other amounts Defendants may be required to pay to settle the Litigation, other than Settlement Payments and the employer's share of payroll taxes associated with such Settlement Payments.

20.     **"Service Award"** means a sum, as explained in Parts II.E and II.Q.3, *infra*, and as authorized by the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction over the Litigation, to be paid to the Named Plaintiff Theresa Piekarski and Opt-in Plaintiffs Edward Thelen and Radha Godambe, in recognition of their service to the Settlement Class in the Litigation.

21.     **"Settlement Administrator"** means the firm of Dahl Administration, mutually selected by the Parties and to be approved by the Court with jurisdiction over the Litigation, or any other firms of successors designated by the Parties and approved by the Court with jurisdiction over the Litigation, to effectuate the settlement by:  (i) issuing notice of the settlement and I.R.S. Form W-9s to the Settlement Class; (ii) collecting required written consent forms and I.R.S. Form W-9s from Participating Class Members; (iii) calculating the amounts to be deposited by Defendants into the Qualified Settlement Fund; (iv) calculating the amounts to be paid to Plaintiffs and individual Participating Class Members as Settlement Payments; (v) distributing Settlement Payments; (vi) distributing I.R.S. Form W-2s and I.R.S. Form 1099s to Participating Class Members; and (vii) any other tasks specified in this Agreement, agreed to in writing by the Parties, or ordered by the Court with jurisdiction over the Litigation.

22.     **"Settlement Class"** is defined as follows:

All full-time Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers employed by Defendants in their home-health division in Illinois, and paid on a per-visit basis, at any time from September 13, 2009 to November 20, 2015, regardless of the specific job title or titles used to describe such individuals in Defendants' data systems, but excluding any individual who (i) was employed by Defendants for the first time after November 20, 2015; (ii) was exclusively categorized as a part-time employee during employment with Defendants from September 13, 2009 to November 20, 2015; (iii) was employed by Defendants for the first time after September 2013, and who consented to be bound by Defendants' Dispute Resolution Agreement, which requires individuals to subject most employment-

related disputes to mandatory arbitration, at the time of their hire, before starting to

work for Defendants; or (iv) previously opted into *Tomkins, et al. v. Amedisys, Inc.*,

Case No. 3:12-cv-01082 WWE (D. Conn.).

A list of all individuals meeting this definition, 117 persons, is attached hereto as Exhibit 3. This list of individuals shall control who is a putative member of the Settlement Class.

23. **"Settlement Expenses"** means, with the exception of Settlement Payments, as defined herein, all expenses associated with administering the settlement, including, but not limited to, the costs of the Settlement Administrator, the costs of mailing the Notice of Settlement, and the costs of disbursing the settlement proceeds, which shall be determined by the Settlement Administrator prior to the mailing of the Notice of Settlement, and which shall be completely paid from the Gross Settlement Amount.

24. **"Settlement Payments"** means the amounts to be paid to Plaintiffs and individual Participating Class Members from the Revised Gross Settlement Amount.

25. **"Qualified Settlement Fund"** shall be the qualified settlement fund established by the Settlement Administrator pursuant to 26 C.F.R. § 1.468B-1 and any other applicable regulations under the Internal Revenue Code.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Plaintiffs (for themselves and the Settlement Class defined above) and Defendants, by and through their respective attorneys, HEREBY FURTHER STIPULATE AND AGREE as follows:

### B.      Scope of Settlement

The settlement described herein will resolve fully and finally the Litigation and all of the released claims as described herein, in Part II.J, *infra*.

### C.      Authority to Execute Settlement

The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof, as detailed below.

Plaintiffs' Attorneys acknowledge that they have retainer agreements with the Named Plaintiff Theresa Piekarski, and that Opt-in Plaintiffs Edward Thelen and Radha Godambe have signed and filed with the Court written consents to participate in the Litigation as party plaintiffs and designating Plaintiffs' Attorneys as their agents to make decisions on their behalf concerning the Litigation.  Pursuant to these retainer agreements and consent forms, Plaintiffs' Attorneys represent that they have authority to negotiate and execute a settlement agreement on behalf of Plaintiffs.  Upon approval by the Court, such settlement agreement shall bind the Participating Class Members, who shall timely submit written consents affirming their participation in the settlement pursuant to the procedures described herein in Part II.K.3, *infra*, to all terms set forth in this Agreement, regardless of whether any particular Participating Class Member submits the required I.R.S. Form W-9 or actually negotiates his or her settlement check and thereby claims a Settlement Payment, as described herein in Parts II.H, II.I, II.K.3, II.L, and II.Q.1, *infra*.

It is agreed that because the members of the Settlement Class are so numerous, it is impossible or impractical to have each member of the Settlement Class execute the Agreement. The Notice of Settlement, the form of which shall be agreed to by the Parties, and which shall be

submitted to the court with jurisdiction over the Litigation for approval, will advise all members of the Settlement Class of the binding nature of the release of claims described in this Agreement (*see* Part II.J, *infra*), and that the release will have the same force and effect upon all Participating Class Members as if the Agreement were executed by each Participating Class Member.

### D.     Individuals Omitted from the Settlement Class and/or Data

To the extent either party identifies individual employees whom they believe were wrongly excluded from the Settlement Class list who are to receive Notice of Settlement, excluded from the data produced to Plaintiffs' Attorneys pursuant to the Parties' December 18, 2015 mediation agreement, or had individual workweeks wrongly excluded from such data, the Parties will meet and confer in good faith to determine the appropriate steps that need to be taken to rectify the errors, including whether such individuals should be included in the settlement and/or whether the Gross Settlement Amount needs to be adjusted.

### E.     Court Approval of Settlement

The Parties agree that Plaintiffs will move the Court with jurisdiction over the Litigation for approval of the settlement described herein.  Plaintiffs shall provide counsel for Defendants with an opportunity to review their Motion for Approval, and all supporting briefs, documents, and exhibits, and shall secure the approval of counsel for Defendants of the same, before filing such motion with the U.S. District Court for the Northern District of Illinois or any other Court taking jurisdiction over the litigation.  Defendants agree not to oppose Plaintiffs' Motion for Approval of this settlement, provided that Plaintiffs provide Defendants with this opportunity to review and approve that motion prior to its filing.

As part of the approval process, Plaintiffs will request Service Awards for the Named Plaintiff Theresa Piekarski and Opt-in Plaintiffs Edward Thelen and Radha Godambe, as set forth

herein. Defendants similarly agree not to oppose such a request, so long as Plaintiffs provide counsel for Defendants with an opportunity to review their request, and all supporting briefs, documents, and exhibits, and secure the approval of counsel for Defendants of the same, before submitting such request, and provided Plaintiffs do not request Service Awards of more than $15,000.00 for Named Plaintiff Theresa Piekarski and of more than $2,500.00 each for Opt-in Plaintiffs Edward Thelen and Radha Godambe.

Further, Plaintiffs will petition the Court for an award of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, as set forth herein. Again, Defendants agree not to oppose such a petition, so long as Plaintiffs provide counsel for Defendants with an opportunity to review their petition, and all supporting briefs, documents, and exhibits, and shall secure the approval of counsel for Defendants of the same, before filing the petition, and so long as the amount of Plaintiffs' Attorneys' Fees sought does not exceed $250,000.00, and the Plaintiffs' Litigation Expenses sought are itemized in Plaintiffs' request to the Court and do not exceed a total amount of $15,000.

Any award of Plaintiffs' Attorneys' Fees, Plaintiffs' Litigation Expenses, and/or Service Awards approved by the Court will be paid solely from the Gross Settlement Amount. In no event will Defendants be required to pay more than the Gross Settlement Amount, except that Defendants will also pay the employer's share of employer payroll taxes associated with payments attributable to back wages to Participating Class Members pursuant to this Agreement.

The Parties' agreement to settle Plaintiffs' claims in the Litigation, as set forth in this Agreement, is contingent upon the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction of the Litigation, granting approval of the settlement and, in the event such court grants approval of the settlement and an appeal of the approval order is filed,

contingent upon the approval order being affirmed on appeal in a form substantially identical to the form of the approval order entered by the court with respect to all material terms. Should the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction of this matter, decline to approve all material aspects of this Agreement, or make rulings substantially altering the material terms of this Agreement, except for the awards of Plaintiffs' Attorneys' Fees, Litigation Expenses, and Service Awards (each of which will be decided by the Court), Defendants will have no obligation to make any payment pursuant to this Agreement, including payment of any portion of the Gross Settlement Amount.

### F.        Certification of the Settlement Class Solely for Settlement Purposes

Solely for purposes of settlement, the Parties agree that Plaintiffs shall request, as part of the Motion for Approval, that the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction of this matter, certify the Settlement Class, defined *supra*, pursuant to 29 U.S.C. § 216(b). Solely for purposes of the settlement, and this related motion for collective action certification, the Parties will stipulate to Named Plaintiff Theresa Piekarski serving as FLSA representative Plaintiff and to Plaintiffs' Attorneys serving as class counsel. Plaintiffs shall provide counsel for Defendants with an opportunity to review their request and all supporting briefs, documents, and exhibits, and shall secure the approval of counsel for Defendants of the same, before filing such request with the Court.

The Agreement is contingent upon the approval by the Court of this Settlement Class solely for settlement purposes. In agreeing to Plaintiffs moving the Court for certification of this Settlement Class solely for the limited purposes of this Agreement, Defendants do not waive, and instead expressly reserve, their rights to challenge the propriety of the certification for any purpose, as well as the suitability of Named Plaintiff Theresa Piekarski serving as FLSA representative

Plaintiff and Plaintiffs' Attorneys service as class counsel, as if this Agreement had not been entered into by the Parties should the settlement not become effective for any reason.

### G. Defendants' Payment of Maximum Gross Settlement Amount

In order to settle the Litigation, and as consideration for Plaintiffs' and Participating Class Members' release of claims, dismissal of the Litigation, and the other good and valuable consideration described herein that Plaintiffs and Participating Class Members are providing to Defendants, Defendants agree to pay up to $766,000.00, which shall be used to provide for: (i) cash Settlement Payments to Plaintiffs and Participating Class Members, as described in this Agreement; (ii) Service Awards, as described herein; (iii) Plaintiffs' Attorneys' Fees, payable as described herein; (iv) Plaintiffs' Litigation Expenses, as described herein; and (v) Settlement Expenses, as defined herein.

Pursuant to this Agreement, Defendants will not be required to pay any amount over $766,000.00 to settle Plaintiffs' and Participating Class Members' claims in the Litigation. This amount, which is the negotiated and mutually agreeable Gross Settlement Amount defined *supra*, represents the maximum gross amount Defendants would pay pursuant to this Agreement in the event every member of the agreed Settlement Class timely participated in the settlement and received Settlement Payments. The Gross Settlement Amount is inclusive of Settlement Payments payable to Plaintiffs and Participating Class Members, as well as any award of Plaintiffs' Attorneys' Fees, Plaintiffs' Litigation Expenses, Settlement Expenses, and Service Awards. However, the maximum Gross Settlement Amount will not include the employer's share of taxes due on portions of any Settlement Payment attributable to wages.

### H. Individual Settlement Payments and Minimum Settlement Payments

All Settlement Payments shall be paid from the Revised Gross Settlement Amount. Each

Plaintiff's and each Settlement Class member's individual *pro rata* share of the Revised Gross Settlement Amount is identified in Exhibit 3. The *pro rata* share of the Revised Gross Settlement Amount to be paid to Plaintiffs and each Participating Class Member as individual Settlement Payments was computed using a formula, developed by Plaintiffs' Attorneys, that estimates the amount of time each Settlement Class member worked each week based on visit start/stop times, estimates the additional time each Settlement Class member spent outside of visits charting and handling visit-related calls, and then applies those estimated hours to each Settlement Class member's actual compensation to estimate the overtime compensation Plaintiffs' claim was not properly paid. Each Settlement Class member's estimated total unpaid overtime wages, as determined by Plaintiff's Attorneys, was then divided by the total estimated unpaid overtime wages owed to all Settlement Class members to determine his or her *pro rata* percentage share of the Revised Gross Settlement Fund, as presented in Exhibit 3 to this Agreement.

The Settlement Administrator shall use the individual *pro rata* percentage shares to determine an estimate of the specific amount of the putative individual Settlement Payments to be paid to each Settlement Class member who returns the required consent and tax forms, so that the amount of such estimated individual Settlement Payments can be included in the Notice of Settlement that will be sent to each member of the Settlement Class. In determining the amount of putative individual Settlement Payments, the Settlement Administrator should ensure that, in any event, a minimum of $50.00 is calculated and allocated as a Settlement Payment for each Settlement Class member, who shall be eligible to receive such payment if the Settlement Class member otherwise meets the requirements of this Agreement for becoming a Participating Class Member and receiving a Settlement Payment.

In agreeing to Plaintiffs' allocation methodology for purposes of the instant settlement,

Defendants in no way concede that Plaintiffs' methodology accurately estimates the hours worked by, or accurately reflects alleged damages to, Plaintiffs or any Participating Class Member.

To the extent that Plaintiffs and Participating Class Members do not return a completed consent to join settlement and release form, or I.R.S Form W-9, and thereby fail to meet the necessary conditions to receive their designated share of the Revised Gross Settlement Amount, their share of the Revised Gross Settlement Amount will remain the sole and exclusive property of Defendants, except as otherwise described herein in Part II.L *infra*. Additionally, if Plaintiffs and Participating Class Members timely submit the required forms to receive a Settlement Payment, and otherwise meet the requirements of the Agreement to receive a Settlement Payment, but do not timely negotiate their settlement checks to receive their designated shares of the Revised Gross Settlement Amount as described herein Part Q.5, the settlement check will be voided and the funds associated with the check with be distributed to the agreed *cy pres* charity, The Dream Foundation.

### I. Tax Treatment

The Parties agree that each Settlement Payment to be issued to each Plaintiff and Participating Class Member pursuant to this Agreement shall be separated into two amounts: 50 percent shall be allocated to the claims asserted in the Litigation for unpaid overtime; and 50 percent shall be allocated to the claims asserted in the Litigation for liquidated damages. The portion of each Settlement Payment allocated to claims of unpaid overtime will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens. However, Defendants will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount. The portion of each Settlement Payment allocated to liquidated

damages shall be characterized as non-wage income to the recipient. In agreeing to this division to Settlement Payments between unpaid overtime and liquidated damages, Defendants does not concede that any individual would be entitled to liquidated damages should this case continued to be litigated.

The Settlement Administrator will report the portion of the Settlement Payment made to each Plaintiff and Participating Class Member attributable to wages on an I.R.S. Form W-2, and the portion of the Settlement Payment attributable to non-wages on an I.R.S. Form 1099 as directed by the I.R.S. Additionally, Plaintiffs and Participating Class Members will be issued an I.R.S. Form 1099 for their *pro rata* share of the Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses provided to Plaintiffs' Attorneys pursuant to this Agreement and settlement. The Settlement Administrator shall be responsible for issuing the settlement checks, less required withholdings and deductions, to Plaintiffs and each Participating Class Member and mailing the settlement checks, I.R.S. Form W-2s, and I.R.S. Form 1099s to each such individual.

In order to allow for the proper tax withholdings from the Settlement Payments, and to allow for the submission of information returns associated with those payments to the appropriate tax authorities, each Plaintiff and Participating Class Member must submit an I.R.S. Form W-9 to the Settlement Administrator in order to receive a Settlement Payment.

### J.       Release of Claims

In order to settle the Litigation, and as consideration for Defendants' payment of the Gross Settlement Amount, which shall provide for cash Settlement Payments to Plaintiffs and Participating Class Members, Service Awards, Plaintiffs' Attorneys' Fees, Plaintiffs' Litigation Expenses, and Settlement Expenses, and the other good and valuable consideration described herein, Plaintiffs and Participating Class Members agree to release any claims they may have

against Defendants as described herein.

### 1. Description of released claims

Effective as of the Effective Date, Named Plaintiff Theresa Piekarski and Opt-in Plaintiffs Edward Thelen and Radha Godambe hereby forever completely settle, compromise, release, and discharge Defendants from any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action of any kind whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which Named Plaintiff Theresa Piekarski and Opt-in Plaintiffs Edward Thelen and Radha Godambe have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that are based upon, relate to, or arise out of or reasonably could have arisen out of their employment with Defendants or by reason of the negotiations leading to this Agreement, except to the extent that any such claim may not be waived as a matter of law.

Each and every Participating Class Member hereby forever completely settles, compromises, releases, and discharges Defendants from any and all claims asserted in the Litigation, including any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Participating Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever that relate to the alleged failure to pay all overtime wages owed, except to the extent that any such claim may not be waived as a matter of law. The claims released by the Named Plaintiff, Opt-in Plaintiffs, and each and every Participating Class Members specifically include without limitation (i) any and all claims asserted

in the Litigation; (ii) any and all claims that could have been asserted in the Litigation related to the alleged failure to pay all overtime wages owed; (iii) any and all claims for unpaid overtime, any allegedly unpaid "gap" time associated with overtime wages, late payment of any overtime wages, retaliation for complaining about overtime wages or for asserting overtime wage-related claims during the period from September 13, 2009 to November 20, 2015, or any other overtime wage-related or overtime recordkeeping-related claims, overtime damages or relief of any kind under the federal Fair Labor Standards Act or under Illinois state law, including but not limited to the Illinois Minimum Wage Law, or any other statutes and/or regulations regulating overtime hours of work, overtime wages, the payment of overtime wages, or overtime recordkeeping-related claims; (iv) any and all claims under state and federal law for liquidated damages, statutory penalties, pre- or post-judgment interest, related to the non-payment or late payment of overtime wages; and (v) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit any Participating Class Member's account and/or benefits for all overtime hours worked or all overtime compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on alleged overtime.

This Release has no application to any claim by any member of the Settlement Class arising after November 20, 2015.

## 2. Agreement not to seek or accept relief in any other action

Plaintiffs and Participating Class Members further covenant and agree that, since they are settling disputed claims, they will not accept, recover, or receive any back pay, liquidated damages, statutory penalties, other damages, or any other form of relief based on any claims asserted or settled in this Litigation, which may arise out of, or in connection with any other individual, class,

collective, representative, administrative, or arbitral proceeding pursued by any individual, class, union, or federal, state or local governmental agency against any Defendants. Plaintiffs and Participating Class Members further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement.

### 3. Recognition of binding nature of release

The Parties agree that as of the Effective Date all Plaintiffs and Participating Class Members, who properly and timely submit a written consent to join settlement in accordance with the procedures described herein in Part II.K.3, *infra*, will be bound by the terms and conditions of this Agreement, the order by the U.S. District Court for the Northern District of Illinois, or any other court taking jurisdiction of the Litigation, granting approval to the Agreement and this settlement, the final judgment in the Litigation, and the releases set forth herein.

### K. Settlement Administrator and Notice Process

The Parties agree that the firm of Dahl Administration, if approved by the Court with jurisdiction over the Litigation, or another Settlement Administrator as defined *supra*, in Part II.A.21, shall serve as the Settlement Administrator for this settlement. To that end, as part of their Motion for Approval, Plaintiffs shall request that the Court approve the Settlement Administrator jointly selected by the Parties to serve in this capacity, and order that such entity perform the specific tasks assigned to the Settlement Administrator in this Agreement, or by order of the Court with jurisdiction over the Litigation, and only those tasks, unless otherwise specifically agreed to by the Parties. This shall include, but is not limited to: (i) calculating the amount of individual Settlement Payments; (ii) determining the total amount (including the employer's share of payroll taxes) to be deposited in the Qualified Settlement Fund; (iii) the issuance of the agreed Notice of Settlement to all members of the Settlement Class defined herein after entry of the Order Granting

Approval of the settlement outlined in this Agreement; (iv) acceptance and processing of consent forms submitted by members of the settlement class (including addressing any deficiencies in the same); (v) issuing and collecting I.R.S. Form W-9s from Plaintiffs and Participating Class Members; (vi) issuing Settlement Payments to Plaintiffs and Participating Class Members, and (vii) issuing I.R.S. Form W-2s and I.R.S. Form 1099s to Plaintiffs and Participating Class Members. The Parties agree that the Settlement Administrator is specifically prohibited from performing activities in relation to this settlement except as specifically provided for in this Agreement, or as ordered by the Court with jurisdiction over the Litigation, unless such activities are first communicated to, and approved by, both Plaintiffs and Defendants.

**1.    Providing and updating contact information for members of the Settlement Class**

Within 14 calendar days after the date the court enters an Order Granting Approval of this Agreement, Defendants will provide the Settlement Administrator with the name, last known mailing address, email address, Employee ID number, and Social Security number for the Named Plaintiff, Opt-in Plaintiffs, and all other members of the Settlement Class from Defendants' records. This information will remain confidential and will not be disclosed to anyone other than the Settlement Administrator, with the exception of applicable taxing authorities or pursuant to express written authorization by the party providing the information or by court order. That fact notwithstanding, Plaintiffs' Attorneys also shall have access to the information Defendants provide to the Settlement Administrator, with the exception of Social Security numbers for any members of the Settlement Class who have not yet submitted consent forms.

In order to ensure that the Settlement Administrator has the most up to date addresses possible, the Settlement Administrator shall update all addresses the Parties provide for the members of the Settlement Class using the national change of address database and by performing

24

a "skiptrace."  Any fees or costs incurred by the Settlement Administrator in updating addresses are Settlement Expenses and are included in the Gross Settlement Amount.

### 2. Distribution of the Notice of Settlement and related materials

Within 30 calendar days after the Court enters an Order Granting Approval of the Agreement, the Settlement Administrator will mail and email the Notice of Settlement.  The Settlement Administrator shall issue the Notice of Settlement by First Class U.S. Mail and email. Along with the Court-approved Notice of Settlement, the Settlement Administrator shall mail and email the consent to join settlement and release forms that members of the Settlement Class are required to complete in order to be considered Participating Class Members and the I.R.S. Form W-9 that Participating Class Members are required to complete in order to receive Settlement Payments, as discussed in greater detail in Part II.H, *supra*, and Parts II.K.3, II.L, and II.Q.5 *infra*. A postage pre-paid return envelope will also be sent with the Notices of Settlement sent via First Class U.S. Mail.  The Settlement Administrator also will distribute a court-approved Reminder Notice via email and First Class U.S. Mail 30 days after the issuance of the Notice of Settlement form to any members of the Settlement Class who have not submitted a consent form to become Participating Class Members.

Should any member of the Settlement Class contact the Settlement Administrator during the Notice Period to request replacement copies of the Notice of Settlement and/or related consent to join settlement and release forms and I.R.S. Form W-9, the Settlement Administrator shall mail or email such individual replacement copies.

### 3. Responses to the Notice of Settlement

The Notice of Settlement and Reminder Notice will inform the Settlement Class that any Participating Class Member who wishes to receive a Settlement Payment must timely sign and

return the consent to join settlement and release form and an I.R.S. Form W-9 in order to receive a Settlement Payment. The Parties' have agreed upon the form of the consent form (*see* Exhibit 1) to be provided to the Court for approval as part of Plaintiffs' Motion for Approval. Such consent form contains sufficient language to allow Participating Class Members to acknowledge through their signature that they: (i) understand the case to include claims explained in the court-approved Notice of Settlement; (ii) wish to participate in the proposed settlement and expressly consent to participation in Plaintiffs' FLSA claims; (iii) acknowledge and agree to the release of claims set forth in this Agreement; (iv) agree to execute a valid release of claims equal in scope to the release contained in Section II.J, *supra*, in the event that release is ruled unenforceable for any reason; (v) represent and warrant that they have not assigned or transferred, in whole or part, any claims or cause of action released as part of this Agreement; and (vi) understand their obligation to keep the Settlement Administrator informed of their current address. The consent form shall also inform Participating Class Members that they must return an I.R.S. Form W-9 to the Settlement Administrator in order to receive a Settlement Payment. Settlement Class members shall have no more than 60 calendar days following the mailing of notice to postmark, email, or fax required consent forms to the Settlement Administrator.

In the event a member of the Settlement Class submits the required consent form in a timely manner (*i.e.*, emailed, faxed, postmarked within the 60 days of the mailing of the Notice of Settlement), but the form is incomplete or otherwise deficient in one or more aspects, the Settlement Administrator will (no later than 14 calendar days after receipt of the incomplete or deficient form or forms) return the deficient document to the individual with a letter explaining the deficiencies and stating that the individual will have until the latter of (i) the original deadline for submitting their required consent form (*i.e.*, 60 days after the mailing of the Notice of

26

Settlement), or (ii) 14 business days from the date the deficiency notice was mailed, to correct the deficiencies and resubmit the document.  In the event a Participating Class Member fails to submit the required I.R.S. Form W-9, or if the form is incomplete or otherwise deficient in one or more aspects, the Settlement Administrator will (no later than 14 calendar days after receipt of a timely consent form without an accompanying I.R.S. From W-9 or receipt of a deficient I.R.S. Form W-9) send the individual a letter explaining the deficiencies (and returning any deficient document received) and stating that the individual must correct the deficiency in order to receive his or her Settlement Payment. The Settlement Administrator will copy counsel for the Parties on such deficiency notices so that Plaintiffs' Attorneys can assist members of the Settlement Class in remedying any deficiency.  The envelope containing the corrected and resubmitted consent form must be postmarked by the end of the Notice Period to be considered timely, unless the corrected forms are received by the Settlement Administrator via facsimile or email by the end of the Notice Period. The Settlement Administrator must receive the completed Form W-9 at least twenty-one (21) days before the expiration of the Check Cashing Period to be considered timely. The Settlement Administrator's decision on whether the deficiency has been remedied shall be binding on the Parties and the individual member of the Settlement Class.

### 4.    Communications regarding notice process

Other than through the Court-approved Notice of Settlement to be mailed and emailed to individuals in the Settlement Class by the Settlement Administrator, and assisting in curing deficiencies as described in Parts II.K.3 and II.M.2 of this Agreement, neither Plaintiffs or Plaintiffs' Attorneys, nor Defendants or their counsel, shall initiate contact with any member of the Settlement Class regarding the Notice or Settlement or the claims process.  That being said, Plaintiffs' Attorneys shall remain free to discuss these issues with any member of the Settlement

Class who first contacts Plaintiffs' Attorneys regarding such issues.

### 5. Settlement Administrator's declaration

The Settlement Administrator shall provide to counsel for both Parties, within 190 days of the mailing of Settlement Payments to Plaintiffs and Participating Class Members, a declaration from an appropriate agent or agents working for it, stating under penalty of perjury: (a) the services that the Settlement Administrator has performed in connection with this settlement; (b) the names and addresses of all individuals to whom the Settlement Administrator mailed notice of the proposed settlement; (c) whether each such individual timely and properly submitted the required consent form and I.R.S. Form W-9 to receive a Settlement Payment; and (d) whether each such individual was sent a Settlement Payment, the amount of such Settlement Payment, and, to the extent known, whether the Settlement Payment was negotiated within the timeframe provided in Part II.Q.5, *infra*.

### L. Opt-in Procedure

In order to participate in the settlement set forth in this Agreement, and to receive a Settlement Payment, members of the Settlement Class must either be Plaintiffs or become Participating Class Members by timely submitting a written consent to join the settlement. In order to allow for the proper tax withholdings from the Settlement Payments, and to allow for the submission of information returns associated with those payments to the appropriate tax authorities, Plaintiffs and each Participating Class Member shall timely provide completed I.R.S. Form W-9s to the Settlement Administrator before receiving a Settlement Payment. Any member of the Settlement Class who does not timely submit a written consent shall not become part of the Litigation, shall not participate in this settlement, and shall not be bound by the release of claims set forth in Part II.J, *supra*. Additionally, Plaintiffs and Participating Class Members will not

receive a Settlement Payment if they do not timely submit a completed I.R.S. Form W-9.

Members of the Settlement Class who are not Plaintiffs shall receive a single form of Notice of Settlement by First Class U.S. Mail and email. Such Notice of Settlement shall set forth the amount of each individual member of the Settlement Class's estimated Settlement Payment. The Notice of Settlement shall include a consent to join settlement and release form and an I.R.S. Form W-9 to return to the Settlement Administrator. Individuals in the Settlement Class will have 60 days to return the consent form from the date they are issued. A Reminder Notice will be distributed via email and First Class U.S. Mail 30 days following the issuance of the Notice of Settlement to individuals who have not submitted a consent form at that time, along with a postage pre-paid return envelope. The Settlement Administrator will update individuals' addresses prior to the issuance of the Reminder Notice and will update addresses for Notice of Settlement packets that are returned.

To the extent that any member of the Settlement Class who is not already a Plaintiff does not timely submit both the completed required consent to join settlement and release form and I.R.S. Form W-9, and therefore is not a Participating Class Member who has met the requirements to receive a Settlement Payment, the prorated portion of the Revised Gross Settlement Amount allocated to him or her will remain the sole and exclusive property of Defendants. However, the Parties agree that, if the Agreement becomes effective, at least 33 percent of the Revised Gross Settlement Amount must be distributed. To assure that this amount is distributed, the Parties agree that: (i) if the amount to be distributed to Plaintiffs and Participating Class Members who have met the requirements to receive a Settlement Payment is less than 20 percent of the Revised Gross Settlement Amount, the difference between that amount and 20 percent of the Gross Settlement Amount will be reallocated as additional Settlement Payments to the Plaintiffs and Participating

29

Class Members on a *pro rata* basis; (ii) if more than 20 percent, but less than 33 percent, of the Revised Gross Settlement Amount is to be distributed to Plaintiffs and Participating Class Members, any undistributed amounts between the 20th percentile and 33rd percentile will be contributed to the agreed *cy pres* charity, The Dream Foundation, a Section 501(c)(3) non-profit that serves terminally ill adults and their families by providing end-of-life dreams that offer inspiration, comfort, and closure (www.dreamfoundation.org).

### M. Communications Regarding the Settlement, Claims Against Defendant, and the Parties to the Litigation

#### 1. Public comment and non-disclosure

The Parties and their attorneys agree that, except as provided for in Part K, *supra*, governing Notice of Settlement, they will not publicize the settlement of the Litigation, any details of that settlement or this Agreement, or any of the events and negotiations surrounding the Agreement or settlement, until after the Effective Date. After the Effective Date, the Parties and their attorneys agree that Named Plaintiff Theresa Piekarski, Opt-in Plaintiffs Edward Thelen and Radha Godambe, and Plaintiffs' Attorneys, and Defendants and Defendants' counsel, will not disclose the terms of the settlement or this Agreement to the media. If asked about the settlement or this Agreement by any third party, including the press, Named Plaintiff Theresa Piekarski, Opt-in Plaintiffs Edward Thelen and Radha Godambe, and Plaintiffs' Attorneys, and Defendants and Defendants' counsel, will acknowledge only that: "The action was resolved on a satisfactory basis;" and/or that "[Plaintiffs or Defendants] and their counsel believe they have reached a fair and reasonable settlement of the disputed claims." For purposes of this provision, "Defendants" constitutes Defendants' corporate Legal personnel, their corporate Human Resources personnel, their corporate marketing and communications personnel, and their corporate officers and directors.

Notwithstanding the foregoing, Plaintiffs' Attorneys shall be permitted to list the existence of the settlement of this action on their firms' websites. In doing so, however, Plaintiffs' Attorneys may not disclose any of the specific terms of the settlement or this Agreement, including the amount of the settlement.

### 2. Non-solicitation

The Parties agree that the Court-approved Notice of Settlement and Reminder Notice shall be the means of providing notice to the Settlement Class about the instant settlement. Plaintiffs' Attorneys, Plaintiffs, Defendants' counsel, and Defendants shall not initiate contact with any member of the Settlement Class who has not submitted a written consent to join the settlement. That being said, Plaintiffs' Attorneys are not prohibited from contacting any member of the Settlement Class regarding the Notice of Settlement or the claims process for the limited purposes of (1) locating members of the Settlement Class whose Notice of Settlement, including the consent form and I.R.S. Form W-9 are returned to the Settlement Administrator as undeliverable, and for whom the Settlement Administrator is unable to identify a new address; or (2) for locating Participating Class Members to deliver settlement checks to them. Further, Plaintiffs' Attorneys shall remain free to discuss the Notice of Settlement and litigation claims process with any member of the Settlement Class who first contacts Plaintiffs' Attorneys, irrespective of whether or not they have filed a written consent.

Further, Plaintiffs and Plaintiffs' Attorneys will not contact, solicit, or otherwise encourage other current or former employees of Defendants to assert claims against Defendants. However, should one of Defendants' current or former employees who is not already a Named Plaintiff or Opt-in Plaintiff contact Plaintiffs' Attorneys about a potential claim against Defendants, Plaintiffs' Attorneys will be free to follow their professional judgment in advising such an individual about

a potential claim regarding Defendants.

### 3. Non-disparagement

Both Plaintiffs and Defendants will refrain from disparagement of the other. For purposes of this clause, "Plaintiffs" include Named Plaintiff Theresa Piekarski, Opt-in Plaintiffs Edward Thelen and Radha Godambe, and Plaintiffs' Attorneys. For purposes of this clause, "Defendants" constitutes Defendants' corporate Legal personnel, their corporate Human Resources personnel, Defendants' counsel in this matter, and their corporate officers and directors.

### N. No Right to Rehire

Plaintiffs agree that they shall have no right to rehire with Defendants.

### O. Service Awards

As part of the settlement, Plaintiffs will request that the Northern District of Illinois, or any other court taking jurisdiction over the Litigation, authorize Service Awards for Named Plaintiff Theresa Piekarski and Opt-in Plaintiffs Edward Thelen and Radha Godambe. Defendants agree not to oppose such requests, so long as Plaintiffs provide counsel for Defendants with an opportunity to review their request, and all supporting briefs, documents, and exhibits, and secure the approval of counsel for Defendants of the same, before submitting such request, and provided that the amount of the Service Awards sought for the Named Plaintiff Theresa Piekarski does not exceed $15,000.00, and the amount of the Service Awards sought for Opt-in Plaintiffs Edward Thelen and Radha Godambe do not exceed $2,500.00 each.

Any service awards authorized by the court shall be paid completely from the Gross Settlement Amount. In no event shall any award of Service Awards to Plaintiffs cause Defendants to pay more than the Gross Settlement Amount in full satisfaction of all its obligations under this Agreement.

### P.    Plaintiffs' Attorneys' Fees and Litigation Expenses

Plaintiffs' Attorneys may make an application or applications to the U.S. District Court for the Northern District of Illinois, or any other Court taking jurisdiction over the Litigation, for an award of Plaintiffs' Attorneys' Fees and an award of Plaintiffs' Litigation Expenses. The amount of the Plaintiffs' Attorneys' Fees will not exceed $250,000.00. The amount of Plaintiffs' Litigation Expenses shall not exceed $15,000.00. Such application or applications shall be filed in connection with the Motion for Approval of the Agreement and this settlement. Defendants will not oppose any such application for fees or costs, so long as Plaintiffs provide counsel for Defendants with an opportunity to review their application, and all supporting briefs, documents, and exhibits, and secure the approval of counsel for Defendants of the same, before submitting such application, and provided that Plaintiffs' Attorneys do not seek to recover attorney's fees in excess of $250,000.00 and do not seek to recover litigation costs in excess of $15,000.00.

If the Court rules that any amounts requested by Plaintiffs' Attorneys as an award of Plaintiffs' Attorneys' Fees or Plaintiffs' Litigation Expenses are excessive or improper, and reduces the same, Plaintiffs' Attorneys may appeal the decision. If Plaintiffs' Attorneys elect not to appeal or if the Court of Appeals affirms the decision, only the reduced amounts will be deemed to be Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses for purposes of this Agreement. Any remaining or reduced amounts shall be added to the Revised Gross Settlement Amount available for distribution to Participating Class Members.

Payment of such Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys as set forth in this Agreement, and payment of Settlement Expenses, shall constitute full satisfaction of any and all obligations by Defendants to pay any person, attorney, or law firm (including but not limited to Plaintiffs' Attorneys) for attorneys' fees, litigation expenses,

or costs incurred on behalf all members of the Settlement Class, and shall relieve Defendants of any other claims or liability to any person for any attorneys' fees, litigation expenses, and costs to which any person may claim to be entitled on behalf of any members of the Settlement Class for this Litigation. Upon payment of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses hereunder, and payment of Settlement Expenses, Plaintiffs' Attorneys and members of the Settlement Class shall release Defendants from any and all claims for attorneys' fees, litigation expenses, and costs relating to this Litigation.

Plaintiffs' Attorneys' Fees and Litigation Expenses, and the Settlement Expenses, will be paid solely from the Gross Settlement Amount. In no event shall any award of Plaintiffs' Attorneys' Fees and Litigation Expenses to Plaintiffs' Attorneys, or the payment of Settlement Expenses, cause Defendants to pay more than the Gross Settlement Amount in full satisfaction of all its obligations under this Agreement.

**Q. Funding of Gross Settlement Amount and Payments from Gross Settlement Amount**

**1. Defendants' payment of the Gross Settlement Amount**

No later than the Effective Date, or 14 days following the end of the Notice Period, whichever is later, the Settlement Administrator shall determine and communicate to Defendants the total amount Defendants are obligated to pay into the Qualified Settlement Fund under the Agreement, by: (i) subtracting from the Gross Settlement Amount the portion of the Revised Gross Settlement Amount allocated to individual Settlement Payments for members of the Settlement Class who did not timely submit the required consent to joint settlement and release forms, which is to remain the sole and exclusive property of Defendants, except as otherwise designated herein in Part II.L; and (ii) adding to the remainder the employer's share of payroll taxes associated with individual Settlement Payments to Participating Class Members. Within seven (7) days of the

Settlement Administrator communicating to Defendants the total amount Defendants are obligated to pay into the Qualified Settlement Fund under the Agreement, Defendants shall deposit that amount into the Qualified Settlement Fund established by the Settlement Administrator.

To the extent that any Participating Class Members do not timely submit the required I.R.S. Form W-9, as discussed in Parts II.H, II.L, and II.Q.5, to receive a Settlement Payment, the Settlement Administrator will calculate the amounts of previously designated Settlement Payments that Defendants paid into the Qualified Settlement Fund for such Participating Class Members, including any payroll taxes associated with such amounts previously calculated for Settlement Payments. As such associated amounts are to remain the sole and exclusive property of Defendants, the Settlement Administrator will return those calculated amounts from the Qualified Settlement Fund to Defendants following the close of the Check Cashing Period.

### 2. Settlement Administrator's payment of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses

Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses, as authorized by the court with jurisdiction over the Litigation, will be paid by the Settlement Administrator from the Gross Settlement Amount five calendar days after the funding of the Qualified Settlement Fund, or five calendar days after a court order in this Litigation awarding Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses to Plaintiffs' Attorneys, whichever is later.

Plaintiffs' Attorneys firm will provide the Settlement Administrator with completed I.R.S. Form W-9s and the Settlement Administrator will issue an I.R.S. Form 1099 to Plaintiffs' Attorneys' firm.

### 3. Settlement Administrator's payment of Service Awards

Service Awards for Named Plaintiff Theresa Piekarski and for Opt-In Plaintiffs Edward Thelen and Radha Godambe, if authorized by the court with jurisdiction over the Litigation, will

be paid by the Settlement Administrator from the Gross Settlement Amount five calendar days after the funding of the Qualified Settlement Fund, or five calendar days of a court order in this Litigation authorizing such Service Awards, whichever is later. The Settlement Administrator will pay the Service Awards ordered by the Court directly to the individuals ordered by the Court to receive such payments.

At an appropriate time following the issuance of such Service Payments the Settlement Administrator will issue to each recipient an I.R.S. Form 1099 that accounts for the payment of the Service Awards. Prior to issuance of those I.R.S. Form 1099s, Named Plaintiffs and Opt-in Plaintiffs will provide the Settlement Administrator with a completed I.R.S. Form W-9.

### 4. Payment of the Settlement Administrator's Expenses

The charges and costs incurred by the Settlement Administrator in performing its duties under this Agreement will be paid solely from the Gross Settlement Amount. The Settlement Administrator shall determine the final amount of such charges and costs prior to mailing the Notice of Settlement. The Parties shall work with the Settlement Administrator to establish an appropriate timeline for distribution of the Settlement Administrator's expenses from the Qualified Settlement Fund, with the understanding that a reasonable portion of the Settlement Administrator's Expenses shall be withheld until such time as the Settlement Administrator has completed its services in relation to this Agreement. Disputes of any kind relating to the Settlement Administrator will be resolved pursuant to the dispute resolution procedures set forth in Part II.R, *infra*, if they cannot be resolved informally by the Parties. The Settlement Administrator will regularly report to the Parties' attorneys, in written form, the substance of the work performed, including all amounts paid under this Agreement.

5. **Settlement Administrator's issuance of Settlement Payments to Participating Class Members**

Within 15 calendar days of Defendant's funding of the Qualified Settlement Fund the Settlement Administrator will make Settlement Payments by U.S. Mail to each Plaintiff and Participating Class Member, provided they have submitted a completed I.R.S. Form W-9 to the Settlement Administrator. At the time these initial Settlement Payment checks are mailed, the Settlement Administrator will inform Plaintiffs' Counsel of the identities of any Participating Class Members who has failed to return a completed I.R.S. Form W-9 by that time, so that Plaintiffs' Attorneys can continue to assist members of the Settlement Class in remedying any deficiency. Such Participating Class Members must submit a completed I.R.S. Form W-9 to the Settlement Administrator at least twenty-one (21) days before the expiration of the Check Cashing Period in order to receive a Settlement Payment. If a Participating Class Member does not timely return a completed I.R.S. Form W-9 to the Settlement Administrator (*i.e.*, at least 21 days before the expiration Check Cashing Period), he or she shall be ineligible to receive a Settlement Payment.

The checks making Settlement Payments shall include language stating "By signing this check, you expressly acknowledge you are releasing claims as set forth in the Stipulation and Settlement Agreement in *Piekarski v. Amedisys Illinois, LLC, et al.*, No. 1:12-cv-07346 (N.D Ill.), which you previously agreed to by executing a Consent to Join Settlement and Release Form in that matter." Copies of each negotiated check showing this acknowledgment and the Plaintiff's or Participating Class Member's signature shall be provided to counsel for Defendants, and upon request to Plaintiffs' Attorneys, by the Settlement Administrator.

Those members of the Settlement Class who have not properly and timely submitted a written consent are not Participating Class Members and are not entitled to a Settlement Payment. Additionally, any Settlement Class Member who does not timely submit to the Settlement

Administrator an I.R.S. Form W-9 is not entitled to any Settlement Payment. The Settlement Administrator's determination of whether a member of the Settlement Class is a Participating Class Member and/or is entitled to a Settlement Payment will be conclusive and binding on all Participating Class Members, subject to the dispute resolution provisions of this Agreement as set forth in Part II.R, *infra*.

Each Plaintiff and Participating Class Member who is entitled to receive a Settlement Payment will have until the end of the Check Cashing Period to negotiate his or her settlement check. If any settlement check is not negotiated in that period of time, that settlement check will be voided, and a stop-payment will be placed on the settlement check. Any individual Settlement Payments which are not negotiated, for any reason, during the Check Cashing Period shall be deemed unclaimed. In such event, the Plaintiffs and Participating Class Members whose Settlement Payments are unclaimed will be deemed to have irrevocably waived any right in or claim to any Settlement Payment, but the Agreement and release of claims contained therein nevertheless will be binding upon them.

The funds associated with Settlement Payment checks that are not negotiated within the Check Cashing Period will be distributed to the *cy pres* charity, The Dream Foundation, unless otherwise required by the relevant states' escheatment laws.

Neither Defendants, nor counsel for Defendants, nor Plaintiffs' Attorneys, Plaintiffs, nor the Settlement Administrator shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event an individual entitled to receive a Settlement Payment notifies the Settlement Administrator that he or she believes that a settlement check has been lost or stolen, the Settlement Administrator shall immediately stop payment on such check. If

the settlement check in question has not been negotiated prior to the stop payment order, the Settlement Administrator will issue a replacement check, from which the fees associated with the stop payment order will first be deducted. Any individual entitled to receive a Settlement Payment who receives a re-issued check will have until the last day of the Check Cashing Period or 45 calendar days from the date the replacement check is mailed to negotiate such re-issued check, whichever is later. If any settlement check is not negotiated in that period of time, that settlement check will be voided and the funds associated with the check will be distributed to the agreed *cy pres* charity, The Dream Foundation.

At an appropriate time following the issuance of Settlement Payments to Plaintiffs and Participating Class Members, the Settlement Administrator will issue to each Plaintiff and Participating Class Member an I.R.S. Form W-2 for the portion of his or her Settlement Payments attributable to wages, and as directed by the I.R.S., an I.R.S. Form 1099 for the portion of his or her Settlement Payment attributable to non-wages, and an I.R.S. Form 1099 for his or her *pro rata* share of the Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses provided to Plaintiffs' Attorneys pursuant to this Agreement and settlement.

### R. Dispute Procedure

Except as otherwise set forth herein (*see* Parts II.Z & II.EE.1, *infra*), in the event of a dispute concerning the proper interpretation of the Agreement, the enforcement of this Agreement, the Parties' rights or obligations under the Agreement, or any alleged breach of the terms of the Agreement, notice must be mailed to counsel for the opposing party as provided in Part II.Y, *infra*. After receipt of such notice, the Parties shall meet and confer in a good faith attempt to resolve the matter for 10 calendar days. In the event those efforts are unsuccessful, and one or more of the Parties attempts to institute any legal action or other proceeding against

any other Party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees, expenses, and costs, including expert witness fees incurred in connection with any enforcement actions, and any damages incurred.

**S.** **Assignment of Claims**

Defendants and their counsel, and Plaintiffs' Attorneys, Plaintiffs, for themselves and on behalf of all other members of the Settlement Class, represent, covenant and warrant that they have not directly nor indirectly, assigned or transferred to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

The Parties further agree that this Agreement will be binding upon, and inure to the benefit of, the Parties, and their respective heirs, trustees, executors, successors, legal administrators, and assigns.

**T.** **Denial of Liability**

Defendants deny that they have failed to comply with the law in any respect, or have any liability under the claims asserted in the Litigation. The Parties acknowledge that this Agreement is entered into for the purpose of compromising disputed claims and that nothing herein is an admission of liability, wrongdoing, or the propriety of collective or class treatment by Defendants. Neither the Agreement nor any document prepared in connection with the settlement may be admitted in any proceeding as an admission by Defendants. Notwithstanding this paragraph, any and all provisions of this Agreement may be admitted in evidence and used in any proceeding to enforce the terms of this Agreement or in defense of any claims released or barred by this

Agreement.

Additionally, no party will be considered a prevailing party in this Litigation for any purpose as a result of this Agreement, except with respect to the evaluation of Plaintiffs' application for an award of Attorneys' Fees in connection with this settlement, the limited purposes for which Plaintiffs may be treated as a prevailing party.

### U.    Construction and Interpretation

The Parties hereto agree that the terms and conditions of the Agreement are the result of lengthy, intensive, arms-length negotiations among the Parties, through counsel, and the Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her, or its counsel participated in the drafting of the Agreement.

Paragraph and section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Agreement or an of its provisions. With the exception of Part I, *supra*, each term of this Agreement is contractual and not merely a recital.

All exhibits attached to the Agreement, and referenced herein, are incorporated into the Agreement by such references and are a material part of this Agreement.  Any notice or other exhibit that requires approval of the Court must be approved without material alteration from its current form in order for this Agreement to become effective.

This Agreement shall be governed by and enforced in accordance with the laws of the State of Illinois.

### V.    Modification

This Agreement, and any of its parts, may be amended, modified, or waived only by an express written instrument signed by all signatories below or their successors-in-interest.

### W.    Counterparts

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement. Electronic signatures by way of facsimile and .PDF shall be deemed and considered an original of this Agreement.

### X.    Return of Discovery

Plaintiffs and Plaintiffs' Attorneys agree to return to counsel for Defendants or to destroy all discovery obtained from Defendants during the course of the Litigation within 60 calendar days of the Effective Date. This includes all copies of such discovery, whether in hardcopy or electronic format. However, Plaintiffs' Attorneys may retain a copy of all pleadings filed in this matter, including any exhibits thereto. Further, Plaintiffs' Attorneys may retain any work product which refers to or quotes from discovery documents. Plaintiffs' Attorneys will notify counsel for Defendants in writing if they or Plaintiffs elect to destroy discovery. Plaintiffs and Plaintiffs' Attorneys agree not to send or otherwise disseminate discovery to any other individual or entity before its return or destruction.

### Y.    Notices, Demands, and Communications Concerning the Settlement

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by First Class U.S. Mail, addressed as follows:

To Plaintiffs, Participating Class Members, and/or Plaintiffs' Attorneys:

Maureen A. Salas, Esq.
WERMAN SALAS P.C.
77 West Washington Street, Suite 1402
Chicago, IL 60602

42

To Defendants and/or counsel for Defendants:

> Michael S. McIntosh, Esq.
> LITTLER MENDELSON, P.C.
> 1650 Tysons Boulevard, Suite 700
> McLean, VA 22102

### Z.     Form and Content Resolution

The Parties agree they must reach agreement on the form and content of the Agreement as well as: the Motion for Approval and any supporting briefing or proposed orders concerning the same; and the Notices of Settlement to be sent to members of the Settlement Class concerning the settlement, including the format of consent to joint settlement and release forms and I.R.S. Form W-9s that Participating Class Members are required to complete in order to receive a Settlement Payment; Plaintiffs' application for an award of Plaintiffs' Attorneys' Fees and Plaintiffs' Litigation Expenses and any supporting briefing or proposed orders concerning the same; and Plaintiffs' request for Service Awards and any supporting briefing or proposed orders concerning the same.

### AA.     Authorization

Plaintiffs' Attorneys warrant and represent that they are fully authorized by Plaintiffs, and the attorneys for Defendants warrant and represent that they are fully authorized by Defendants, to take all appropriate action required or permitted by this Agreement. The Parties and their attorneys agree to fully cooperate with each other to accomplish the terms of the settlement and this Agreement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Agreement. The Parties to the Agreement and their attorneys shall use their best efforts, including all efforts contemplated by the Agreement and any other efforts that may become necessary by order of the U.S. Northern District of Illinois, or any other court taking jurisdiction over the Litigation, or otherwise, to

effectuate the Agreement and the terms set forth herein.

**BB.    Dismissal**

Upon entry of an order approving this Agreement, Plaintiffs agree to execute all documents necessary to dismiss with prejudice any and all claims raised against Defendants in the Litigation following Defendants depositing amounts specified in this Agreement in the Qualified Settlement Fund to be established by the Settlement Administrator, as set forth in Part II.Q.1, *supra*.  Both Plaintiffs and Defendants shall stipulate to the entry of final judgment with no appeal provided the Court approves the material terms of the Parties' Agreement. Nothing in this paragraph prohibits Plaintiffs or Plaintiffs' Attorneys from appealing an award of Plaintiffs' Attorney's fees and costs, or the Service Awards, should the sums awarded by the Court fall below that requested, provided that Plaintiffs' requests are consistent with this Agreement.

**CC.    Jurisdiction of the Court**

After final approval by the Court, the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their attorneys hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the Settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

**DD.    Reasonableness Of Settlement**

The Parties believe that this is a fair, reasonable, and adequate settlement and have arrived at this settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

**EE.  Termination of the Settlement Agreement**

**1.  Grounds for settlement termination:**

Plaintiffs' Attorneys or Defendants' counsel may terminate the Agreement if the Court declines to enter an Order Granting Approval or judgment in substantially the same form as that submitted by the Parties, or the Agreement does not become final for any other reason, or a Court of Appeals reverses the entry of an order granting final approval to this settlement or a final judgment in this Litigation following such an order, provided that the Parties agree to work cooperatively and in good faith, including mediating unresolved differences with mediator Michael Dickstein of Dickstein Dispute Resolution/MEDiate for a period of 14 calendar days, to address and resolve any concerns identified by the Court in declining to enter an Order Granting Approval or judgment in the form submitted by the Parties.

**2.  Procedures for termination:**

To terminate this Agreement on one of the grounds specified above, the terminating counsel (*i.e.*, Plaintiffs' Attorneys or counsel for Defendants) shall give written notice to the opposing counsel no later than 15 business days after the Court acts.

**3.  Effect of termination:**

In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Litigation is barred by operation of the law, is invalidated, is not approved, or otherwise is ordered not to be carried out by any court:

(a.)  The Agreement shall be terminated and shall have no force or effect, and no party shall be bound by any of its terms;

(b.)  In the event the Agreement is terminated, Defendants shall have no obligation to make any payments to any Plaintiff, any member of the Settlement Class, or Plaintiffs' Attorneys, except that the Parties shall be jointly responsible (*i.e.*, each party will be

45

responsible for 50% of fees due) for paying the Settlement Administrator for services rendered up to the date the Settlement Administrator is notified that the Agreement has been terminated;

(c.) Any Order Granting Approval of this settlement, and/or judgment, including any order of collective action certification, shall be vacated;

(d.) The Agreement and all negotiations, statements, and proceedings relating thereto, shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the settlement;

(e.) Neither this Agreement, nor any ancillary documents, actions, statements, nor filings in furtherance of settlement (including all matters associated with the mediation) shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever;

(f.) Defendants shall specifically reserve the right to oppose collective-action certification pursuant to 29 U.S.C. § 216(b) and to oppose class-action certification pursuant to Fed. R. Civ. P. 23 should the Agreement not become final.

## FF. Disclosure Required by Securities Law

Notwithstanding anything to the contrary in this Agreement, it is understood and agreed that Defendants shall be permitted to make such disclosures concerning the settlement and this Agreement as, in the opinion of its securities counsel, are required by the securities laws of the United States and the rules of any applicable stock exchange, if any, without the necessity of providing prior notice to Plaintiffs, Participating Class Members, or Plaintiffs' Attorneys, or obtaining the consent of Plaintiffs, Participating Class Members, or Plaintiffs' Attorneys.

## GG. Integration Clause

After this Agreement is fully executed by all Parties, it will constitute the entire Agreement

of the Parties and fully supersedes any and all prior agreements or understandings, written or oral, between the Parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the Parties during the mediation that resulted in this Agreement. This integration clause does not apply to the Parties' Confidential Mediation Agreement entered into by the Parties on December 18, 2015, the Fed. R. Evid. 502(d) and (e) Clawback Stipulation and Order approved by the Court on September 9, 2013 (Dkt. No. 82), or the Agreed Confidentiality Order approved by the Court on September 9, 2013 (Dkt. Nos. 83).

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement:


Dated: _____          By_____
                              Theresa Piekarski
                              Plaintiff


Dated: _____          By_____
                              Edward Thelen
                              Plaintiff


Dated: _____          By_____
                              Radha Godambe
                              Plaintiff


Dated: _____          By_____
                              Maureen A. Salas, Esq.
                              WERMAN SALAS P.C.
                              Attorneys for Plaintiffs


Dated: _____          By_____
                              Douglas M. Werman, Esq.
                              WERMAN SALAS P.C.
                              Attorneys for Plaintiffs


Dated: _____          By_____
                              Jennifer Guckert
                              VP and Associate General Counsel
                              For Amedisys, Inc.


Dated: _____          By_____
                              Angelo Spinola, Esq.
                              LITTLER MENDELSON, P.C.
                              Attorneys for Defendant


Dated: _____          By_____
                              Michael S. McIntosh, Esq.
                              LITTLER MENDELSON, P.C.
                              Attorneys for Defendant

# EXHIBIT 1

**[Settlement Administrator Letterhead]**

[_____, 2016]

[Plaintiff Name]
[Plaintiff Address]
[Plaintiff Address]

>**Re:** **Notice of Settlement of Collective Action** (*Piekarski, et al. v. Amedisys Illinois, LLC, and Amedisys Holding LLC* (Case No. 1:12-cv-07346)

Dear [Plaintiff]:

You are receiving this letter because the United States District Court for the Northern District of Illinois has approved a settlement of an overtime lawsuit against Amedisys Illinois, LLC and Amedisys Holding LLC ("Amedisys") and authorized this notice be sent to individuals who are eligible to participate in the settlement. You are eligible to participate in the settlement because (1) Amedisys's records indicate you worked in Amedisys's home health division as a full-time Registered Nurse, Physical Therapist, Occupational Therapist, Speech Language Pathologist, or Medical Social Worker in Illinois and were paid on a per-visit basis between September 13, 2009 and November 20, 2015 (the "Class Period"), (2) you did not join the lawsuit captioned *Tomkins v. Amedisys, Inc.,* Case No. 3:12-cv-01082 (WWE) (D. Conn.), and (3) you did not start working for Amedisys for the first time after September 2013 and agree to be bound by the Amedisys Dispute Resolution Agreement. This letter explains the material terms of the settlement, how you can participate in the settlement, and how the settlement will affect your rights.

>**1. What Is this Lawsuit About?**

Named Plaintiff Theresa Piekarski, and "Opt-in" Plaintiffs Edward Thelen and Radha Godambe, worked as clinicians for Amedisys' home health division in Illinois. They claim that Amedisys failed to pay them overtime wages when they worked over forty (40) hours a week. Plaintiffs claim that, prior to December 2010, Amedisys treated clinicians as exempt from federal and state overtime requirements, but paid such individuals using a "per-visit" compensation model that did not comply with applicable regulations for exempt employees. Plaintiffs further argue that when Amedisys treated them and other per-visit clinicians as "non-exempt" and overtime eligible, it required them to work without reporting all hours, and denied them overtime wages for all time they worked over forty (40) hours a week. Plaintiffs allege Amedisys violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207*,* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4a. Based on these allegations, Plaintiffs seek to recover unpaid overtime wages, liquidated damages, penalties, interest and attorneys' fees and costs.

Amedisys denies each of Plaintiffs' allegations and expressly denies any and all charges of wrongdoing or liability in this lawsuit. To the contrary, Amedisys contends it acted in compliance with applicable federal and Illinois laws and paid per-visit clinicians all wages due. This includes properly classifying certain per-visit clinicians as exempt from overtime in compliance with federal and state laws, and paying per-visit clinicians all overtime wages owed when they were classified as "non-exempt" and overtime eligible. Accordingly, Amedisys believes plaintiffs' claims for unpaid wages, liquidated damages, pre- and post-judgment interest, attorneys' fees, and costs are without merit. Amedisys also denies that the asserted claims are appropriate for collective or class action treatment.

>**2. Why Was the Case Settled?**

Although the lawsuit alleges that Amedisys denied overtime wages to clinicians who were paid on a "per-visit" basis during the Class Period, Amedisys denies all allegations in the lawsuit. Litigation is uncertain, and neither side can predict the outcome. If the litigation continued, you faced the risk that the Court would not certify the FLSA collective action class or the IMWL class action, and even if the Court certified one or more of the classes, you faced the risk that Amedisys would prevail on a motion for summary judgment, on a subsequent motion for decertification, or at trial. Moreover, this lawsuit has already been pending for over three years and it would likely be several more years before any final resolution could be reached through litigation.

Given these factors, the Named Plaintiffs, Opt-in Plaintiffs, and their counsel concluded, after careful consideration of all of the facts and circumstances, that the proposed settlement agreed to by the parties, is fair, reasonable, and adequate, and is in the best interests of the potential class members. This settlement avoids the costs, inconvenience, and risks associated with further litigation, while providing cash benefits to individuals who join the settlement.

The Court has not decided in favor of Plaintiffs or Amedisys. Instead, at a mediation, the parties agreed to settle the case instead of proceeding further in litigation. Magistrate Judge Schenkier, of the United States District Court for the Northern District of Illinois, has, however, approved the parties' settlement.

### 3. How Do I Participate in the Settlement and Receive a Settlement Payment?

You must sign and timely submit the enclosed Consent to Join Settlement and Release Form in order to participate in the settlement and receive a settlement payment. You also must timely submit an I.R.S. Form W-9 in order to receive a settlement payment so that the Settlement Administrator can issue you the appropriate I.R.S. tax forms. To be considered timely, the Consent form must be postmarked by no later than **[mail date + 60]** if returned by U.S. Mail, or received by **[mail date + 60]** if returned by fax or email.

> You may return your signed Consent to Join Settlement and Release Form and I.R.S. Form W-9 to the Settlement Administrator in the postage pre-paid return envelope, or you may fax it to the Settlement Administrator at (---) __ -___, or you may email it to the Settlement Administrator at _____.

You should keep a record of mailing to verify the date it was mailed and you should contact the Settlement Administrator to confirm that your form was received. The Settlement Administrator can be telephoned at _____.

### 4. How Much Will I Receive as Part of the Settlement?

Under the terms of the settlement, if you timely submit a Consent to Join the Settlement and Release Form, **you would be entitled to receive an estimated payment of $_____,** before the withholding of taxes, provided that you submit a completed I.R.S. Form W-9**.**

### 5. What Do I Give Up If I Participate in the Settlement?

If you elect to participate in the settlement by timely submitting the enclosed Consent to Join Settlement and Release Form in order to participate in the settlement, you will settle and release Amedisys from the claims asserted in this case that arise between September 13, 2009 and November

20, 2015, as well as any claims against Amedisys arising under federal, state, or other applicable law during that period, whether known or unknown, that relate to Amedisys's alleged failure to pay all overtime wages owed, except to the extent that any such claim may not be waived as a matter of law. This means you will not be able to bring a separate lawsuit for such claims, or accept damages or other relief for such claims in an action brought by anyone else.  If you choose to participate in the settlement, you will not release any claim arising after November 20, 2015. A complete version of the release is printed on the Consent to Join Settlement and Release Form.

### 6. What Payments Is Amedisys Making Under the Settlement?

In total, Amedisys is paying up to $766,000.00 to settle this lawsuit. From that sum, the "Gross Settlement Amount," Amedisys is paying Plaintiffs' Attorneys' Fees in the amount of $250,000; Litigation Expenses and Costs in the amount of $___; Settlement Administration Costs in the amount of $___; a Named Plaintiff Service Payment in the amount of $15,000 to Theresa Piekarski, and Opt-In Plaintiff Service Payments in the amount of $2,500 each to Edward Thelen and Radha Godambe. The remainder, which is referred to as the "Revised Gross Settlement Amount," is available for distribution to the Settlement Class as individual Settlement Payments.

### 7. How Was My Settlement Payment Calculated?

Your Settlement Payment is based on a formula that was applied to all Settlement Class members the same way for each week they worked during the Class Period. The formula, developed by Plaintiffs' attorneys, estimates the amount of time each potential participant in this settlement worked each week based on visit start/stop times, estimates of time spent outside of visits charting and handling visit-related calls, and then applies those estimated hours to each individual's actual compensation to estimate the overtime compensation Plaintiffs claim was not properly paid.  Your estimated total unpaid overtime wages calculated by Plaintiffs' Attorneys will be divided by the total estimated unpaid overtime wages Plaintiffs' Attorneys claim is owed to the class to determine your *pro rata* percentage of the Revised Gross Settlement Fund. Once that percentage is determined, the percentage will be multiplied by the Revised Gross Settlement to determine your individual Settlement Payment.

### 8. Do I Owe Taxes on the Settlement Payment?

Each individual Settlement Payment will be separated into two equal amounts: fifty percent (50%) will be allocated to the claims asserted in the lawsuit for unpaid overtime, and fifty percent (50%) will be allocated to the claims asserted in the lawsuit for liquidated damages. The portion allocated to claims asserted in this lawsuit for unpaid overtime wages will be subject to all authorized or required deductions, just as if it were a regular paycheck, and will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages will be reported as non-wage income on an I.R.S. Form 1099. In addition, Plaintiffs' Attorneys' fees will be reported on a *pro rata* basis as non-wage income on an I.R.S. Form 1099. Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you. Amedisys will pay the employer's share of applicable state and federal payroll taxes associated with the settlement payments outside of the Gross Settlement Amount.

### 9. What Are My Options?

### (a) Receive a Settlement Payment by Timely Returning a Consent to Join Settlement and Release Form and I.R.S. Form W-9

By signing and timely returning the Consent to Join Settlement and Release Form, you will join the settlement and will receive a Settlement Payment if you return an I.R.S. Form W-9. If you join the settlement by timely returning the Consent to Join Settlement and Release Form you also agree to release, for the period of time between September 13, 2009 and November 20, 2015, any and all claims asserted or that could have been asserted in the Litigation, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, that relate to the alleged failure to pay all overtime wages owed. A complete version of the release is printed on the Consent to Join Settlement and Release Form. You should read that release before returning your Consent to Join Settlement and Release Form.

      **(b)**     **Do Not Receive a Settlement Payment and Preserve Your Rights Against Amedisys**

If you do not sign and timely return the enclosed Consent to Join Settlement and Release Form, you will not participate in the settlement and will not receive a Settlement Payment. You also will not release any claims you may have against Amedisys. Additionally, you will not receive a Settlement Payment if you do not also return the enclosed I.R.S. Form W-9. You should be aware that Fair Labor Standards Act claims are limited to a two or three year statute of limitations and that Illinois Minimum Wage Law claims are limited to a three year statute of limitations.

### 10. Does the Law Protect Me From Retaliation If I Participate?

Yes. It is illegal for Amedisys to retaliate or discriminate against you based on your decision to participate or not participate in the settlement. Amedisys will not discriminate or retaliate against you in any way because of your decision to participate or not participate in this settlement.

### 11. What Happens If My Address Changes After I Submit a Consent to Join Settlement And Release Form?

If you submit a Consent to Join Settlement and Release Form, and your address changes before you receive a Settlement Payment, it is your responsibility to inform the Settlement Administrator of your new address. Please mail any change of address, former address, and new address to the Settlement Administrator at _____.

### 12. Are There More Details Available?

This notice summarizes the basic terms of the settlement. Further details of the settlement are contained in the parties' Stipulation of Settlement. You may contact the Settlement Administrator at (---) __ -__ to request a copy of the Stipulation of Settlement. Additionally, all the filings in this lawsuit are available online via the Court's Public Access to Court Electronic Records ("PACER") website (https://pacer.login.uscourts.gov/csologin/login.jsf), at a cost of $.10 per page. In order to access documents via that website, you must first sign-up for a PACER account (https://pacer.psc.uscourts.gov/pscof/regWizard.jsf). If you want to ask questions when deciding whether to accept this offer, you may also contact Plaintiffs' Attorneys Douglas M. Werman or Maureen A. Salas at Werman Salas P.C. at (312) 419-1008. Please do not contact the Court, the Court Clerk, Amedisys, or its Counsel.

Sincerely,

*[Insert Name]*

*Piekarski, et al. v. Amedisys Illinois, LLC, et al.*

**Case No. 12-cv-07346 (Northern District of Illinois, Eastern Division)**

## CONSENT TO JOIN SETTLEMENT AND RELEASE FORM

---

- **If you want to participate in the settlement and receive a payment from the settlement fund, you must complete and return this form to the Settlement Administrator.**

- **To be considered timely, this form must be postmarked by no later than [mail date + 60] if returned by U.S. Mail, or received by [mail date + 60] if returned by fax or email.**

- **If you do not timely return this form, you will not receive a payment from the settlement fund.**

- **If you want to receive a payment from the settlement fund, you also must timely complete and return the enclosed I.R.S. Form W-9 to the Settlement Administrator.**

- **If you decide not to participate in the Settlement, your rights will not be affected and you retain the right to bring your own lawsuit concerning the issues in this case.**

---

I agree to join and to participate in the settlement of this lawsuit. In exchange for an estimated payment in the amount of $_____, before the withholding of taxes, and pursuant to the court-approved settlement in this action, I forever completely settle, compromise, release, and discharge Defendants Amedisys Illinois, LLC and Amedisys Holdings, LLC, including their past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations, for the period of time between September 13, 2009 and November 20, 2015, from any and all claims asserted in the lawsuit listed at the top of this form, and any and all claims that could have been asserted in that lawsuit, including any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which I have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to the alleged failure to pay all overtime wages owed, except to the extent that any such claim may not be waived as a matter of law. The claims released specifically include without limitation (i) any and all claims asserted in the lawsuit listed at the top of this form; (ii) any and all claims that could have been asserted in that lawsuit related to the alleged failure to pay all overtime wages owed; (iii) any and all claims for unpaid overtime, any allegedly unpaid "gap" time associated with overtime wages; late payment of any overtime wages, retaliation for complaining about overtime wages or for asserting overtime wage-related claims during the period covered by the data Defendants produced in connection with the mediation, or any other overtime wage-related or overtime recordkeeping-related claims, overtime damages or relief of any kind under the federal Fair Labor Standards Act, under Illinois state law, including but not limited to the Illinois Minimum Wage Law, or any other statutes and/or regulations regulating overtime hours of work, overtime wages, the payment of overtime wages, or overtime recordkeeping-related claims; (iv) any and all claims under state and federal law for liquidated damages, statutory penalties, pre- or post-judgment interest, related to the non-payment or late payment of overtime wages; and (v) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit my account

**TURN FORM OVER TO REVIEW SECOND PAGE**

*Piekarski, et al. v. Amedisys Illinois, LLC, et al.*
**Case No. 12-cv-07346 (Northern District of Illinois, Eastern Division)**

and/or benefits for all overtime hours worked or all overtime compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on alleged overtime.

If this release is ruled unenforceable for any reason, I agree to execute a valid release of the aforementioned claims equal in scope.

I represent and warrant that I have not directly nor indirectly assigned or transferred, in whole or in part, any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged.

I understand my obligation to keep the Settlement Administrator and Plaintiffs' Attorneys informed of my current address.

**I understand that in order to receive a payment, I need to fully complete this form and return an I.R.S. Form W-9 so that the Settlement Administrator can issue me the appropriate I.R.S. tax forms.**

Name (Print) _____

Signature _____ Date _____

Mailing Address _____

Form **W-9**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

**Print or type**
**See Specific Instructions on page 2.**

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

**6** City, state, and ZIP code

**7** List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

**or**

**Employer identification number**

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**

Signature of U.S. person ▶

Date ▶

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.*

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

Form W-9 (Rev. 12-2014)

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose name you entered in Part I of Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note: ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

Form W-9 (Rev. 12-2014)                                                                                     Page **3**

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

**Limited Liability Company (LLC).** If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form to accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note.** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

Form W-9 (Rev. 12-2014)　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page **4**

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i) (A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity[4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i) (B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.

*Note. Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information may also be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

# EXHIBIT 2

**[Settlement Administrator Letterhead]**

[_____, 2016]

[Plaintiff Name]
[Plaintiff Address]
[Plaintiff Address]

      **Re:**    **Notice of Settlement of Collective Action**
             *Piekarski, et al. v. Amedisys Illinois, LLC, and Amedisys Holding LLC*, Case No.
             1:12-cv-07346 (N.D. Ill.)

Dear [Plaintiff]:

On _____, 2016, we mailed you a Notice of Settlement of Collective Action. That notice informed you that you are eligible to participate in a settlement in a lawsuit seeking to recover allegedly owed, but unpaid, overtime wages against Amedisys Illinois, LLC and Amedisys Holding LLC.

If you wish to participate in the settlement, you must return a signed Consent to Join Settlement and Release Form to us by **[INITIAL MAIL DATE + 60 DAYS], 2016** at [ADDRESS], [EMAIL], or [FAX] (fax). To date, we have not received this form from you. If you do not sign and timely return a Consent to Join Settlement and Release Form you will not be able to participate in the settlement and will not receive a settlement payment. You must also return an I.R.S. Form W-9 in order to receive a settlement payment, so that the Settlement Administrator can issue you the appropriate I.R.S. tax forms. However, if you do not wish to participate in the settlement, no further action is required.

If you would like a replacement copy of the Notice of Settlement of Collective Action or another copy of the Consent to Joint Settlement and Release Form/I.R.S. Form W-9, and/or need to update your address, please contact us at (---) __ -__. If you want to ask questions when deciding whether to participate in the settlement, you may also contact Plaintiffs' Attorneys – Douglas M. Werman or Maureen A. Salas – at Werman Salas P.C. at (312) 419-1008.

                              Very truly yours,

                              Settlement Administrator

*Piekarski, et al. v. Amedisys Illinois, LLC, et al.*
**Case No. 12-cv-07346 (Northern District of Illinois, Eastern Division)**

## CONSENT TO JOIN SETTLEMENT AND RELEASE FORM

- **If you want to participate in the settlement and receive a payment from the settlement fund, you must complete and return this form to the Settlement Administrator.**

- **To be considered timely, this form must be postmarked by no later than [mail date + 60] if returned by U.S. Mail, or received by [mail date + 60] if returned by fax or email.**

- **If you do not timely return this form, you will not receive a payment from the settlement fund.**

- **If you want to receive a payment from the settlement fund, you also must timely complete and return the enclosed I.R.S. Form W-9 to the Settlement Administrator.**

- **If you decide not to participate in the Settlement, your rights will not be affected and you retain the right to bring your own lawsuit concerning the issues in this case.**

I agree to join and to participate in the settlement of this lawsuit. In exchange for an estimated payment in the amount of $_____, before the withholding of taxes, and pursuant to the court-approved settlement in this action, I forever completely settle, compromise, release, and discharge Defendants Amedisys Illinois, LLC and Amedisys Holdings, LLC, including their past, present, or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, representatives, accountants, auditors, consultants, attorneys, fiduciaries, both individually and in their official capacities, employee benefits plans, insurers and reinsurers, and their respective successors and predecessors in interests, subsidiaries, affiliates, parents, divisions, partners, and affiliated organizations, for the period of time between September 13, 2009 and November 20, 2015, from any and all claims asserted in the lawsuit listed at the top of this form, and any and all claims that could have been asserted in that lawsuit, including any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which I have or might have, known or unknown, asserted or unasserted, of any kind whatsoever, that relate to the alleged failure to pay all overtime wages owed, except to the extent that any such claim may not be waived as a matter of law. The claims released specifically include without limitation (i) any and all claims asserted in the lawsuit listed at the top of this form; (ii) any and all claims that could have been asserted in that lawsuit related to the alleged failure to pay all overtime wages owed; (iii) any and all claims for unpaid overtime, any allegedly unpaid "gap" time associated with overtime wages; late payment of any overtime wages, retaliation for complaining about overtime wages or for asserting overtime wage-related claims during the period covered by the data Defendants produced in connection with the mediation, or any other overtime wage-related or overtime recordkeeping-related claims, overtime damages or relief of any kind under the federal Fair Labor Standards Act, under Illinois state law, including but not limited to the Illinois Minimum Wage Law, or any other statutes and/or regulations regulating overtime hours of work, overtime wages, the payment of overtime wages, or overtime recordkeeping-related claims; (iv) any and all claims under state and federal law for liquidated damages, statutory penalties, pre- or post-judgment interest, related to the non-payment or late payment of overtime wages; and (v) any and all claims pursuant to or derived from Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, to the extent such ERISA claims are premised on an alleged failure to credit my account

**TURN FORM OVER TO REVIEW SECOND PAGE**

*Piekarski, et al. v. Amedisys Illinois, LLC, et al.*
**Case No. 12-cv-07346 (Northern District of Illinois, Eastern Division)**

and/or benefits for all overtime hours worked or all overtime compensation paid or entitled to be paid, but excluding any potential ERISA claim that is not based on alleged overtime.

If this release is ruled unenforceable for any reason, I agree to execute a valid release of the aforementioned claims equal in scope.

I represent and warrant that I have not directly nor indirectly assigned or transferred, in whole or in part, any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged.

I understand my obligation to keep the Settlement Administrator and Plaintiffs' Attorneys informed of my current address.

**I understand that in order to receive a payment, I need to fully complete this form and return an I.R.S. Form W-9 so that the Settlement Administrator can issue me the appropriate I.R.S. tax forms.**

Name (Print) _____

Signature _____   Date _____

Mailing Address _____

Form **W-9**
(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

*Print or type* · *See Specific Instructions on page 2.*

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

**6** City, state, and ZIP code

Requester's name and address (optional)

**7** List account number(s) here (optional)

## Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

_ _ _ – _ _ – _ _ _ _

**or**

**Employer identification number**

_ _ – _ _ _ _ _ _ _

## Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶ _____   Date ▶ _____

# General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

Form W-9 (Rev. 12-2014)

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; **do not** leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose name you entered in Part I of Form W-9.

a. **Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note. ITIN applicant:** Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

b. **Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

c. **Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

d. **Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

e. **Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

## Line 2

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

## Line 3

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

**Limited Liability Company (LLC).** If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

## Line 4, Exemptions

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

**Exempt payee code.**

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

**Exemption from FATCA reporting code.** The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

**Note.** You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

## Line 5

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

## Line 6

Enter your city, state, and ZIP code.

## Part I. Taxpayer Identification Number (TIN)

**Enter your TIN in the appropriate box.** If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see *Limited Liability Company (LLC)* on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

**Note.** See the chart on page 4 for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at *www.ssa.gov*. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at *www.irs.gov/businesses* and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note.** Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** *A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.*

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see *Exempt payee code* earlier.

**Signature requirements.** Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) b. So-called trust account that is not a legal or valid trust under state law | The grantor-trustee[1] The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i) (A)) | The grantor* |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity[4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i) (B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.

[4] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see *Special rules for partnerships* on page 2.

**\*Note.** Grantor also must provide a Form W-9 to trustee of trust.

**Note.** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:

• Protect your SSN,

• Ensure your employer is protecting your SSN, and

• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

**Protect yourself from suspicious emails or phishing schemes.** Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to *phishing@irs.gov*. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at: *spam@uce.gov* or contact them at *www.ftc.gov/idtheft* or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information may also be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.

# EXHIBIT 3

*Piekarski , et al. v. Amedisys Illinois, LLC, et al.*, No. 1:12-cv-07346 (N.D. Ill.)
**EXHIBIT 3 TO STIPULATION AND SETTLEMENT AGREEMENT**

## Members of Settlement Class

| pie_med_id | employeeid | empname | Pro Rata Percentage Share |
|---|---|---|---|
| 1 | 10004037 | Bajwa, Sikander M | 0.00792% |
| 2 | 10005072 | Ericson, Susan Marie | 3.54923% |
| 3 | 10005302 | Brent, Denise | 0.12255% |
| 4 | 10005305 | Daarol, Rita | 0.12951% |
| 5 | 10005306 | Fallows, Thomas | 0.04857% |
| 6 | 10005309 | Lewis, Kathleen | 0.24785% |
| 7 | 10005311 | Mann, Juanita | 0.29371% |
| 8 | 10005317 | McCann, Thomas W | 0.00097% |
| 9 | 10005323 | Tawfic, Nabil | 2.66386% |
| 10 | 10005324 | Tesoro, Olymphia | 0.02104% |
| 11 | 10005346 | Bakaitis, Rima L | 0.06333% |
| 12 | 10005364 | De Frees, Paula | 0.96634% |
| 13 | 10005365 | Gallagher Corrigan, Susan M | 1.15626% |
| 14 | 10005369 | Michal, Victoria | 0.03279% |
| 15 | 10005376 | Wedgbury, Vicki | 0.10622% |
| 16 | 10005378 | Wrobel, Beata M | 2.70620% |
| 17 | 10006997 | Engert, Peter J | 0.81174% |
| 18 | 10007223 | Walker, Renee | 0.07173% |
| 19 | 10009334 | Soderberg, Helen E | 2.25065% |
| 20 | 10010140 | Messenger, Sharon | 1.72004% |
| 21 | 10010148 | Boudros, Henrietta | 0.06326% |
| 22 | 10010150 | Domaracki, Suzanne C | 0.49985% |
| 23 | 10010151 | Hizon, Teresa R | 3.29649% |
| 24 | 10010154 | Mitcham, Mary J | 1.17818% |

**Exhibit 3 – Members of Settlement Class**

| pie_med_id | employeeid | empname | Pro Rata Percentage Share |
|---|---|---|---|
| 25 | 10011090 | Mashburn, Phaedra Y | 0.00000% |
| 26 | 10011266 | Edrada, Anna R | 0.48404% |
| 27 | 10011718 | Saladi, Purna V | 0.50332% |
| 28 | 10011820 | Wasilewicz, Maciej | 2.60356% |
| 29 | 10011883 | Wierzbicki, Brenda M | 1.32465% |
| 30 | 10012258 | Hurley-Bartl, Cathy | 0.06073% |
| 31 | 10012265 | Patel, Indira D | 3.30139% |
| 32 | 10016199 | Cote Toscano, Rebecca Lynn | 0.74880% |
| 33 | 10016633 | Tarnauskas, Skaiste | 0.09369% |
| 34 | 10016659 | Gurdiel, Imelda Carmela B | 6.39926% |
| 35 | 10016950 | Pascual, Francis | 6.08439% |
| 36 | 10018032 | Kotlyar, Elizabeth | 0.00000% |
| 37 | 10018545 | Hurley, Michele T | 0.99326% |
| 38 | 10018599 | Lusk, Michele | 0.40368% |
| 39 | 10019738 | Bryant, Bridget A | 6.27796% |
| 40 | 10019870 | Gries, Christopher | 0.47663% |
| 41 | 10020361 | Parlor, Kathleen M | 2.02814% |
| 42 | 10020862 | Laventure, April M | 0.08677% |
| 43 | 10022173 | Haymon, Tracy | 0.00164% |
| 44 | 10022225 | Peoples, Vernetta R | 0.04411% |
| 45 | 10022246 | Smith, Joseph | 0.00000% |
| 46 | 10022683 | Thelen, Edward A | 6.06689% |
| 47 | 10022805 | DiClemente, Steven James | 2.85801% |
| 48 | 10024713 | Salva, Rosalio R | 3.50316% |
| 49 | 10024934 | Lary, Wendi Sue | 0.67194% |
| 50 | 10025252 | Schatz, Mary E | 4.05536% |
| 51 | 10025412 | Gress, Vicki Lee | 0.00000% |
| 52 | 10025530 | Ostrowski, Jeanine M | 0.00000% |
| 53 | 10025656 | Parpart, Paul | 0.06424% |

**Exhibit 3 – Members of Settlement Class**

| pie_med_id | employeeid | empname | Pro Rata Percentage Share |
|---|---|---|---|
| 54 | 10025954 | Wochner, Vanessa A | 0.02913% |
| 55 | 10026188 | Hansen, Robin M | 0.03709% |
| 56 | 10026356 | Dancea, Maria | 0.00000% |
| 57 | 10026397 | Dever, Nicole M | 1.01251% |
| 58 | 10026614 | Chiappetta, Gina | 0.04113% |
| 59 | 10026935 | Schiro, Teresa M | 0.00000% |
| 60 | 10026957 | Shimkus, Michael J | 0.00000% |
| 61 | 10027033 | Wright, Regina A | 0.04245% |
| 62 | 10027104 | Marchetti, Katherine | 3.92161% |
| 63 | 10027168 | LeRoy, Sarah | 0.13213% |
| 64 | 10027251 | Coursey, Amanda C | 0.11471% |
| 65 | 10027687 | Weeks, Pamela J | 0.05613% |
| 66 | 10027693 | Pawula, Justin Robert | 1.73520% |
| 67 | 10027762 | Ostlund, Liane | 0.01100% |
| 68 | 10027791 | Paff, Christina L | 0.52896% |
| 69 | 10027915 | Young, Linda | 0.01527% |
| 70 | 10028051 | Pelczarski, Justin Mark | 1.01212% |
| 71 | 10028131 | Ezra, Heman N | 0.01610% |
| 72 | 10028728 | Weiss, Bethannie | 0.01001% |
| 73 | 10029156 | Israelson, Aleksandra L | 0.89648% |
| 74 | 10029278 | Goree, Shonetha | 0.01553% |
| 75 | 10030106 | Medina, Aleili G. | 0.34868% |
| 76 | 10030154 | Garrity, David l | 0.16025% |
| 77 | 10030307 | Basu, Gauri S | 0.29817% |
| 78 | 10030468 | Magnino-Rabig, Miki | 0.00323% |
| 79 | 10030542 | Van Deven, Rachel Ann | 0.04029% |
| 80 | 10030631 | Spivey, Pamela R | 0.00480% |
| 81 | 10030655 | Godambe, Radha | 1.23899% |
| 82 | 10032663 | Boggavarapu, Venkateswara Rao | 0.07021% |

**Exhibit 3 – Members of Settlement Class**

| pie_med_id | employeeid | empname | Pro Rata Percentage Share |
|---|---|---|---|
| 83 | 10032731 | Ledesma, Ellen Marie | 0.05000% |
| 84 | 10033148 | Ballano, Emil Francis Joseph | 0.50738% |
| 85 | 10033367 | Battista, Corinne M | 0.00000% |
| 86 | 10033393 | Joseph, Leslie Alise | 0.17802% |
| 87 | 10033541 | Bottalla, Janel Rogette | 1.73893% |
| 88 | 10033654 | Piekarski, Theresa E | 0.66656% |
| 89 | 10035134 | Lai, Frances Anne Bertulfo | 0.70648% |
| 90 | 10035191 | Shipley, Shelley L | 0.20421% |
| 91 | 10035299 | Kumar, Amrendra | 1.11591% |
| 92 | 10035404 | Damian, Evaliz Paglinawan | 2.27218% |
| 93 | 10035783 | Boulukos, John Frank | 0.13037% |
| 94 | 10035896 | Gunter, Lisa Kay | 0.04386% |
| 95 | 10036064 | DeRohan, Kari Montgomery | 0.30499% |
| 96 | 10036195 | Mira, Jose Galvino L | 0.00000% |
| 97 | 10036801 | Panozzo, Gina Lee | 1.11317% |
| 98 | 10036863 | Fields, Marlene A | 0.14076% |
| 99 | 10036980 | Henrard, Robin | 0.59694% |
| 100 | 10037073 | Michelsen, Jeanine Cordero | 0.13280% |
| 101 | 10037090 | Rowden, Megan Kristine | 1.01272% |
| 102 | 10037106 | Lungay, Maribeth Salido | 0.21028% |
| 103 | 10037184 | Youssief, Ashraf N | 0.00000% |
| 104 | 10037193 | Castro, Cecile Fontillas | 0.00548% |
| 105 | 10037737 | Marty, Emilie O | 0.00173% |
| 106 | 10038273 | Armbruster, June Christine | 0.56092% |
| 107 | 10038855 | Fine, Christine | 0.13691% |
| 108 | 10038898 | Ivy, Yokie | 0.00575% |
| 109 | 10039681 | Taylor, Tracy | 0.00000% |
| 110 | 10040743 | Buscemi, Deborah L. | 0.06950% |
| 111 | 10041201 | Forsythe, Delane A. | 1.74178% |

**Exhibit 3 – Members of Settlement Class**

| pie_med_id | employeeid | empname | Pro Rata Percentage Share |
|---|---|---|---|
| 112 | 10042298 | Avila, Jennifer | 0.00000% |
| 113 | 10042556 | Lederer, Amanda | 0.23725% |
| 114 | 10043428 | Jonikaitis, Francine Mary | 0.00000% |
| 115 | 10043596 | San Pedro, Ma Reginia Lim | 0.35005% |
| 116 | 10044944 | Wells, Josephine | 0.18959% |
| 117 | 10045439 | Ramos, Rachel Cabungcal | 2.63938% |

# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THERESA PIEKARSKI, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12-cv-07346 |
| v. | ) ) | Magistrate Judge Schenkier |
| AMEDISYS ILLINOIS, LLC, and AMEDISYS HOLDING, LLC, | ) ) ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER APPROVING OPT-IN SETTLEMENT**

Consistent with the Parties' proposed Stipulation and Settlement Agreement in this action (Dkt. 152-1) (the "Settlement Agreement"), and after having fully and carefully reviewed Plaintiffs' Unopposed Motion to Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes; for Approval of an Opt-in Settlement; for Appointment of Settlement Administrator; and for Approval of Awards of Attorneys' Fees and Costs and Services Awards, the Court hereby APPROVES the Parties' Settlement and ORDERS that:

1.     The Court APPROVES the Settlement Agreement as a fair, equitable, and reasonable resolution of a *bona fide* dispute in this contested litigation, subject to no Federal or State official intervening within 100 days of the filing of the proposed settlement with the Court under the Class Action Fairness Act, 28 U.S.C. § 1715. The Court incorporates the Settlement Agreement herein by this reference and makes it a part hereof as though set forth in full.

1

2.     The Court CERTIFIES, solely for purposes of the Parties' Settlement Agreement, hereby approved by the Court, the following Settlement Class, as defined in Part II.A.22 of the Settlement Agreement, for collective treatment pursuant to 29 U.S.C. § 216(b):

> All full-time Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, and Medical Social Workers employed by Defendants in their home-health division in Illinois, and paid on a per-visit basis, at any time from September 13, 2009 to November 20, 2015, regardless of the specific job title or titles used to describe such individuals in Defendants' data systems, but excluding any individual who (i) was employed by Defendants for the first time after November 20, 2015; (ii) was exclusively categorized as a part-time employee during employment with Defendants from September 13, 2009 to November 20, 2015; (iii) was employed by Defendants for the first time after September 2013, and who consented to be bound by Defendants' Dispute Resolution Agreement, which requires individuals to subject most employment-related disputes to mandatory arbitration, at the time of their hire, before starting to work for Defendants; or (iv) previously opted into *Tomkins, et al. v. Amedisys, Inc.*, Case No. 3:12-cv-01082 WWE (D. Conn.).

A list of all individuals meeting this definition, 117 persons, is attached hereto as exhibit 3 to the Settlement Agreement.

3.     The formula for allocation of settlement payments set forth in the Settlement Agreement is APPROVED as a fair, equitable, and reasonable measure for distributing the settlement payment to the Settlement Class Members;

4.     The Notice of Settlement attached as exhibit 1 to the Settlement Agreement, which includes a "Consent to Join Settlement and Release Form," as well as an I.R.S. Form W-9, is APPROVED and shall be issued consistent with the procedures outlined below and in the Settlement Agreement, to the Settlement Class;

5.     The Named Plaintiff and Opt-in Plaintiffs shall not be required to submit a consent to join settlement and release form to participate in the Settlement. All other members of the Settlement Class must submit a consent to join settlement and release form by the close of the

Notice Period, as defined in the Settlement Agreement, to participate in the Settlement and to become a Participating Class Member.

6.     Each and every member of the Settlement Class who becomes a Participating Class Member shall be deemed to completely settle, compromise, release, and discharge Defendants from any and all claims asserted in the Litigation, including any and all past and present matters, disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Participating Class Member has or might have, known or unknown, asserted or unasserted, of any kind whatsoever that relate to the alleged failure to pay all overtime wages owed, except to the extent that any such claim may not be waived as a matter of law, as more fully described in the Parties' Settlement Agreement.  This Release has no application to any claim by any member of the Settlement Class arising after November 20, 2015.

7.     Settlement Class members who do not return an executed consent to join settlement and release form by the close of the Notice Period will not release any claims against Defendants.

8.     Following the close of the Notice Period, the Parties shall file a report with the Court identifying all Settlement Class members who became Participating Class Members.

9.     Dahl Administration is APPOINTED to serve as the neutral, third-party Settlement Administrator in this case.   The Court HEREBY ORDERS and AUTHORIZES Dahl Administration to perform the administrative duties specified herein.

    *I.     Issue Notice of Settlement*

        First, the Court ORDERS Dahl Administration, consistent with Part II.K of the Settlement Agreement, to issue the Notice of Settlement to all members of the

3

Settlement Class consistent with the procedures set forth in the parties' Settlement Agreement. To that end, Dahl Administration shall:

a.  Accept receipt from Defendants of the names and last known mailing addresses, email address, Employee ID number, and Social Security number for the Named Plaintiff, Opt-in Plaintiffs, and all other members of the Settlement Class;

b.  Update the provided addresses for all members of the Settlement Class using the National Change of Address database and by performing one "skiptrace" to identify, if possible, an updated addresses, prior to mailing notices to members of the Settlement Class;

c.  Prepare, format, print, and disseminate by First-Class U.S. Mail and email the Notice of Settlement, which will include the Court-approved notice, the consent to join settlement and release forms that members of the Settlement Class are required to complete in order to be considered Participating Class Members, and the I.R.S. Form W-9 that Participating Class Members are required to complete in order to receive Settlement Payments, as well as a postage pre-paid return envelope for the consent to join settlement and release form sent via First Class U.S. Mail; and

d.  Thirty (30) days after the issuance of the Notice of Settlement, prepare, format, print, and disseminate by First-Class U.S. Mail and email the Court-approved Reminder Notice to any members of the Settlement Class who have not at that time submitted a consent to join settlement and release form to become Participating Class Members, which will include the Court-

4

approved Reminder Notice, the consent to join settlement and release form, and the I.R.S. Form W-9, as well as a postage pre-paid return envelope for the consent to join settlement and release form sent via First Class U.S. Mail.

II.     *Collect Required Forms and Requests for Exclusion*

The Court FURTHER ORDERS Dahl Administration to collect Court-approved consent to join settlement and release forms and I.R.S. Form W-9s returned via U.S. Mail, e-mail, or fax by members of the Settlement Class who wish to receive Settlement Payments.  As part of these tasks, Dahl Administration shall:

a.     Establish and maintain a mailing address, e-mail account, and fax number for receipt of collect Court-approved Consent to Join Settlement and Release Forms and I.R.S. Form W-9s; and

b.     Within 14 calendar days of the receipt of any collected Court-approved consent to join settlement and release forms, identify any deficiencies and return any deficient forms to the senders, along with a letter (copying counsel for the Parties) explaining the deficiency, and instructions to resubmit corrected forms within 14 calendar days.

c.     Within 14 calendar days of the receipt of any collected timely Court-approved consent to join settlement and release forms without accompanying I.R.S. Form W-9s or receipt of deficient I.R.S. Form W-9s, after identifying any deficiencies, send the individual a letter (copying counsel for the Parties) explaining the deficiencies (and returning any deficient document received) and stating that the individual must correct

5

the deficiency and submit or re-submit the corrected forms at least 21 days before the expiration of the Check Cashing Period in order to receive his or her Settlement Payment.

III.    *Establish and Distribute Funds from a Qualified Settlement Fund*

Additionally, the Court ORDERS that, following the end of the Notice Period, Dahl Administration shall take the necessary steps, consistent with the Settlement Agreement, to distribute individual Settlement Payments to Participating Class Members, as well as to make any other Court-authorized payments under the settlement.  This shall include:

a.      Determining, and communicating to Defendants, the total amount Defendants are obligated to pay into the Qualified Settlement Fund ("QSF") under the Settlement Agreement, by: (i) subtracting from the Gross Settlement Amount the portion of the Revised Gross Settlement Amount allocated to individual settlement awards for members of the Settlement Class who did not timely submit the required consent to join settlement and release forms (taking into account the minimum distribution floor established in Part II.L of the Settlement Agreement); and (ii) adding to the remainder the employer's share of payroll taxes associated with individual Settlement Payments to Participating Class Members;

b.      Setting up a QSF and accepting distribution from Defendants of the amount discussed in the prior paragraph;

c.      Calculating and returning to Defendants the amounts of previously designated Settlement Payments that Defendants paid into the Qualified

Settlement Fund any Participating Class Members who do not timely submit the required I.R.S. Form W-9 to receive a Settlement Payment, including any payroll taxes associated with such amounts previously calculated for Settlement Payments.

d.      Paying Court-authorized awards of Plaintiffs' Attorney's Fees and Plaintiffs' Litigation Expenses, as described below, from the QSF and issuing I.R.S. Form 1099s to Plaintiffs, Participating Class Members, and Plaintiffs' Counsel for such payments;

e.      Paying Court-authorized Service Awards to the Named Plaintiff and Opt-in Plaintiffs, as described below;

f.      Determining the costs of Dahl Administration's own services and expenses in connection with the administration of the settlement;

g.      Calculating the amounts of individual Settlement Payments to be provided to all members of the Settlement Class, based on the Parties' agreed methodology and the preliminary calculations provided by Plaintiffs' Attorneys;

h.      Determining which members of the Settlement Class are Participating Class Members, as defined in Part II.A.12 of the Settlement Agreement;

i.      Calculating and withholding required taxes, including but not limited to all FICA and FUTA taxes, from the individual Settlement Payments made to Plaintiffs and Participating Class Members who have timely provided an I.R.S. Form W-9;

7

j.     Calculating and notifying Defendants of the FICA and FUTA tax payments which Defendant is responsible to pay;

k.     Performing all tax reporting duties required by federal, state, or local law;

l.     Preparing and sending, by U.S. Mail, individual settlement checks to the Plaintiffs and Participating Class Members who have timely returned an I.R.S. Form W-9, consistent with the Settlement Agreement;

m.     Preparing and sending, by U.S. Mail, I.R.S. Form W-2s and 1099s to each Authorized Claimant, following the issuance of settlement checks, consistent with the provisions of the Settlement Agreement;

n.     Providing copies of each negotiated settlement check to counsel for Defendants and, upon request, Plaintiffs' Attorneys;

o.     Voiding and placing stop-payments on settlement checks that are not negotiated within 180 calendar days following their being mailed to Plaintiffs or Participating Class Members, or that are reported as potentially stolen or lost by a Plaintiff or Participating Class Members;

p.     Re-issuing checks as specified in the Part II.Q.5 of the Parties' Settlement Agreement;

q.     Escheating unclaimed Settlement Payments, including funds from non-negotiated checks, to the appropriate state agencies, to the extent required by applicable law; and

r.     Distributing to the Parties' agreed *cy pres* charity, The Dream Foundation, any undistributed or unclaimed Settlement Payments, including any amounts required under the agreed minimum distribution floor set forth in

8

Part II.L of the Settlement Agreement or funds from non-negotiated checks that are not subject to escheatment.

IV.     *Reporting Activities to the Parties*

Dahl Administration is HEREBY ORDERED to regularly report to the parties, in written form, the substance of the work it performs in this matter pursuant to this Order and the parties' Settlement Agreement. This shall include informing the parties of the dates Dahl Administration mails Notice of Settlement to members of the Settlement Class, when it distributes and funds from the Qualified Settlement Fund, and when it mails settlement the Court's order granting final approval to the proposed settlement, if any.

Specifically, Dahl Administration shall provide counsel for both parties, within 190 days of the mailing of Settlement Payments, a declaration from an appropriate agent or agents working for it, stating under penalty of perjury: (a) the services that the Settlement Administrator has performed in connection with this settlement; (b) the names and addresses of all individuals to whom the Settlement Administrator mailed notice of the proposed settlement; (c) whether each such individual timely and properly submitted the required consent form and I.R.S. Form W-9 to receive a Settlement Payment; and (d) whether each such individual was sent a Settlement Payment, the amount of such Settlement Payment, and, to the extent known, whether the Settlement Payment was negotiated within the timeframe provided in the Settlement Agreement.

To allow the parties and the Court to evaluate the work performed by Dahl Administration in this matter, Dahl Administration is also ORDERED to maintain

records of all activities associated with its settlement administration duties pursuant to this Order and the parties' Settlement Agreement, including: (i) records reflecting the dates of all mailings to members of the Settlement Class; (ii) records reflecting the dates of all materials and inquiries received in connection with the proposed settlement (whether by U.S. Mail, e-mail, fax, or telephone); (iii) the original mailing envelope for any returned Notice of Settlement, any tax or consent forms received by U.S. Mail or any other correspondence received from members of the Settlement Class; (iv) logs or date-stamped copies showing the dates and times of receipt of tax or consent forms received by fax; (v) the original copies of any email communications with any members of the Settlement Class.

V.    *Miscellaneous*

The Court FURTHER ORDERS that counsel for all parties have the right to review and approve any substantive communications to be distributed by Dahl Administration to Settlement Class members and Participating Class Members in connection with the proposed settlement prior to their distribution. As such, Dahl Administration shall not distribute Notices of Settlement, Reminder Notices, consent to join and consent forms, deficiency notices, and/or settlement checks without first receiving written approval from counsel for both Parties of the templates for such documents. Nor shall Dahl Administration engage in any other substantive communications with Settlement Class members and/or Participating Class Members, without first receiving approval from counsel for both Parties, or direction from the Court, to engage in such communications. Dahl Administration is FURTHER ORDERED to take reasonable steps to protect the disclosure of any

and all personal information concerning members of the Settlement Classes provided to Dahl Administration by counsel for the Parties, including but not limited to their names, addresses, Employee ID numbers, and Social Security numbers. This includes maintaining reasonable administrative, physical, and technical controls in order to avoid public disclosure of any such information and to protect the confidentiality, security, integrity, and availability of such personal data. It further and specifically includes disseminating to Plaintiffs' Attorneys the Social Security number for any member of the Settlement Class who has not submitted a written Consent to Join the Settlement and Release Form.

Finally, Dahl Administration is ORDERED to perform whatever additional tasks that are agreed to by all Parties, and which are reasonably necessary to effectuate the issuance of notice of the settlement of this action, to collect and track the tax and consent forms provided by members of the Settlement Class who wish to become Participating Class Members and receive Settlement Payments, and to distribute funds associated with the settlement.

10. The Court APPROVES the payment of attorneys' fees to Werman Salas P.C. in the amount of $250,000 and reimbursement of litigation expenses and costs to Werman Salas P.C. in the amount of $10,495.00.

11. The Court APPROVES the payment of settlement administration fees to Dahl Administration in the amount of $8,392.

12. The Court APPROVES the Named Plaintiff Service Award in the amount of $15,000.00 to Theresa Piekarski, and the Opt-In Plaintiff Service Awards in the amount of $2,500, each, to Edward Thelen and Radha Godambe.

13.     Defendants are hereby ORDERED to make payments in accordance with and subject to the terms of the Settlement Agreement, unless one or more of the Federal or State officials to whom Defendants sent notice of the Parties' proposed settlement under the Class Action Fairness Act, 28 U.S.C. § 1715, intervenes in this action within 100 days of the filing of the proposed settlement with the Court.

14.     This case is DISMISSED WITHOUT PREJUDICE. The Court retains jurisdiction to enforce the terms of the Settlement Agreement for a period of one-hundred and eighty (180) days after entry of this Order. If no motion is brought to enforce the terms of the Settlement Agreement within one-hundred and eighty days after entry of this Order, the dismissal without prejudice will convert to a dismissed with prejudice as to Named Plaintiff Piekarski, Opt-in Plaintiff Thelen, Opt-in Plaintiff Godambe, and all Participating Class Members. The dismissal will have no effect on any Settlement Class member who does not become a Participating Class Member.

SO ORDERED this _____ day of _____, 2016.

_____

Magistrate Judge Sidney I. Schenkier

# EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THERESA PIEKARSKI, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 12-cv-07346 |
| v. | ) ) ) | Magistrate Judge Schenkier |
| AMEDISYS ILLINOIS, LLC, and AMEDISYS HOLDING, LLC, | ) ) ) | |
| Defendants. | ) | |

**DECLARATION OF MAUREEN A. SALAS**

I, Maureen A. Salas, declare and state under penalty of perjury, the following:

1.       I am a member in good standing of the Illinois State Bar and am a shareholder of Werman Salas P.C.

2.       All the facts stated herein are true and correct and are within my personal knowledge.

3.       I submit this declaration in support of Plaintiff Theresa Piekarski's and Opt-in Plaintiffs Edward Thelen's and Radha Godambe's (collectively, "Plaintiffs") Unopposed Motion to Certify a Collective Action Class Under Section 216(b) of the FLSA Solely for Settlement Purposes; for Approval of an Opt-In Settlement; for Appointment of Settlement Administrator; and for Approval of Awards of Attorneys' Fees and Costs and Service Awards.

**The Litigation**

4.       The Action was initially filed on September 13, 2012, in the U.S. District Court for the Northern District of Illinois, Eastern Division, by the Named Plaintiff, Theresa Piekarski. Plaintiff Piekarski alleged that Defendants Amedisys Illinois, LLC and Amedisys Holding, LLC

("Defendants" or "Amedisys") failed to pay her and other clinicians employed by Defendants in Illinois overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/4a. Piekarski's FLSA claim was filed as a collective action, and her IMWL claim was filed as a Rule 23 class action. Opt-in Plaintiffs Edward Thelen and Radha Godambe filed consents to participate in this Action on April 1, 2014 and September 14, 2015, respectively.

5.      Defendants moved to transfer the case to the U.S. District Court for the District of Connecticut, or stay the case, because another lawsuit had been filed against Amedisys, Inc. on July 25, 2012, in that other venue, *Tomkins v. Amedisys, Inc.,* No. 3:12-CV-01082 (WWE) (D. Conn. July 25, 2012) (previously *Cook v. Amedisys*). The *Tomkins* suit raised a nationwide FLSA collective action and a Rule 23 class action under Pennsylvania state law. The Court denied Amedisys' request to transfer the suit, but granted their alternative request to stay this Action, pending resolution of class certification issues and dispositive motions in the *Tomkins* matter. The Court did, however, permit discovery related to Piekarski's future motion for conditional certification to Illinois class members.  Except for discovery taken relating to conditional certification, this Action has been stayed since May 28, 2013.

6.      During the stay of the *Piekarski* matter, nationwide collective action notice was issued under the FLSA to putative class members in the *Tomkins* matter. The *Tomkins* parties subsequently settled the action pending in the District of Connecticut, without having resolved the issues relevant to this case regarding dispositive motions and the propriety of class or collective treatment, and the *Tomkins* suit case was dismissed in January 2016.

7.      The parties disagree on many procedural and substantive issues. Plaintiffs claim they and other similarly situated Illinois home health clinicians are entitled to unpaid overtime wages,

statutory penalties, and attorneys' fees and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the analogous Illinois Minimum Wage Law ("IMWL") 820 ILCS 105-1, *et seq.* Plaintiffs claim that Defendants misclassified "per-visit" home health clinicians in Illinois as exempt from overtime because their pay practices violated the U.S. Department of Labor rules for fee-basis compensation, 29 C.F.R. § 541.605. Plaintiffs also assert that their claims include unpaid overtime wages, statutory penalties, and attorneys' fees and costs during time periods when Defendants treated them and other per-visit clinicians as "non-exempt" and overtime eligible, as they allege Defendants required them to work "off the clock" and/or did not use the appropriate methodology for computing their overtime pay, thus, denying them full pay for all hours worked, including overtime. Defendants deny Plaintiffs' allegations under both the FLSA and IMWL and assert that they have paid Plaintiffs, and all other allegedly similarly situated individuals whom Plaintiffs seek to represent, appropriately and in full compliance with applicable laws. Defendants contend that Plaintiffs and those they seek to represent were either properly classified as exempt from overtime under federal and state law, or were treated as non-exempt and paid overtime for all hours worked, during the time period at issue in this Action. They further dispute that collective or class treatment of Plaintiffs' claims would be appropriate if the parties' were to litigate those claims.

8.     Before the parties reached this proposed Settlement, they had already exchanged substantial amounts of information and documents through the discovery the Parties took relating to Plaintiff Piekarski's potential motion for conditional certification of her FLSA claim. Plaintiff Piekarski issued to Defendants requests for the production of documents and two sets of interrogatories. In response to Plaintiff Piekarski's discovery requests, Amedisys produced over 53,800 pages of documents, plus some timekeeping and payroll data for putative class members.

Plaintiff Piekarski answered written discovery requests and produced 152 pages of documents. Piekarski also sat for a deposition.

9.     Following resolution of the first-filed *Tomkins* matter, without having resolved the issues relevant to this case regarding dispositive motions and the propriety of class or collective treatment, Amedisys approached Plaintiffs' Attorneys in Fall 2015 to discuss whether Plaintiffs were interested in exploring settlement before the stay was lifted in this Action. Plaintiffs and Amedisys entered into a formal mediation agreement on December 18, 2015. Consistent with that agreement, Amedisys provided Plaintiffs' Attorneys with time and payroll data for all putative class members for the time period between September 13, 2009 and November 20, 2015, and Plaintiffs used that data to develop a settlement demand, which they sent to Amedisys on February 15, 2016, along with an explanation of how they arrived at their demand. Amedisys responded with an alternative settlement offer on February 29, 2016, along with an explanation of how they arrived at their offer.

10.     On March 18, 2016, the parties participated in a mediation with nationally-recognized mediator Michael Dickstein in Chicago, Illinois. The parties were successful in reaching an arm's length resolution of the class/collective action claims raised in this action following a twelve-hour mediation with Mr. Dickstein.

11.     Based on my extensive experience litigating wage and hour class and collective action lawsuits, like this one, I believe the settlement reached in this case is fair and provides substantial compensation to Plaintiff and Opt-in Plaintiffs without the attendant risks and delay of continued litigation.

**Plaintiffs' Attorneys and Plaintiffs Support the Settlement**

12. Plaintiffs' Attorneys has gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Based on Plaintiffs' Attorneys' knowledge of the case and the applicable law, as well as their experience in numerous similar wage and hour collective and class actions, Plaintiffs' Attorneys believe the settlement is fair and reasonable. Additionally, the Named Plaintiff and the two Opt-In Plaintiffs participated in the mediation and have approved the Settlement Agreement.

13. The estimated *pro rata* allocations available to the Settlement Class members are set forth on exhibit 3 of the Settlement Agreement. The estimated Settlement Payments range from the minimum payment of $50.00 to over $30,000.00, and the average Settlement Payment approximates $4,080.00

**The Named Plaintiff and Opt-In Plaintiffs Were Critical to the Resolution of the Claims and Are Entitled to Service Payments**

14. The service payment sought for Plaintiff Piekarski is requested to recognize her efforts to pursue the claims raised in this Action as the sole Named Plaintiff on behalf of the class over the course of four years. Plaintiff Piekarski provided factual information and otherwise assisted Plaintiffs' Attorneys with the prosecution of the litigation, responded to interrogatories and requests for the production of documents, sat for a deposition, and attended a twelve-hour mediation.

15. Plaintiffs Edward Thelen and Radha Godambe filed consent forms to join the lawsuit as the only two opt-in plaintiffs, spent time and effort conferring with Plaintiffs' Counsel, provided information that assisted the Named Plaintiff in reaching this settlement on behalf of Settlement Class Members, as defined in the parties' Stipulation and Settlement Agreement, and

attended and/or participated in the mediation with Mr. Dickstein (Thelen in person and Godambe by phone).

**My Experience and the Experience of Other Members of My Firm**

16.     I graduated from DePaul University College of Law in May 2006 *summa cum laude* (top 5%) and was elected into the Order of the Coif.  I was admitted to practice law in the State of Illinois in 2006.  During the entire course of my legal practice, I have practiced primarily in the area of labor and employment law. My practice has been highly concentrated in representing employees in cases arising under federal and state wage and hour laws, including the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA").

17.     Over 95% of my legal work involves federal and state court litigation of wage and hour cases in which employees seek to collect unpaid compensation or other owed employment benefits.

18.     Since I became admitted in 2006, I have practiced primarily in representing employees in cases arising under federal and state wage and hour laws, including the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). I have been counsel in over three hundred and eighty (380) cases filed in the Northern, Southern and Central Districts of Illinois and the State of Illinois, Circuit Court of Cook County, involving the non-payment of overtime pay, minimum wages, and other owed compensation. The majority of these cases proceeded as collective actions under §216(b) of the FLSA and/or set forth class action claims under the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act.

19.     I have been a speaker on wage and hour matters. In October 2011, I was a speaker at the National Employment Lawyers Association's meeting on "Representing Workers in

Individual & Collective Actions Under the FLSA." In August 2012, I was a speaker at the American Bar Association's - Section of Labor and Employment Law's - Annual Meeting. In October 2012 and October 2013, I was a speaker for continuing legal education "Wage & Hour Law" programs hosted by Bridgeport Legal Conferences. On March 9, 2013, I was a speaker at the National Employment Lawyers Association meeting on "Preventing Wage Theft: A Two-Day Guide to Litigation Cases Involving Wages, Hours and Work." On March 23, 2016, I was a speaker for an Illinois State Bar Association continuing legal education program "Tips for Negotiating Parental Leave for Attorneys." On April 28, 2016, I was a speaker for a Chicago Bar Association continuing legal education program "Hot Topics in Wage & Hour Law."

20.    I am a Contributing Editor to Chapter 19, "Collective Actions," of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*."

21.    Douglas M. Werman is the managing shareholder of Werman Salas P.C. He was admitted to practice law in the State of Illinois in 1990. Since being admitted he has practiced primarily in representing employees in cases arising under federal and state wage and hour laws, including the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). Mr. Werman has been lead counsel in over six hundred cases filed in the Northern, Southern and Central Districts of Illinois and the State of Illinois, Circuit Court of Cook County, involving the non-payment of overtime pay, minimum wages, and other owed compensation. The majority of these cases proceeded as collective actions under §216(b) of the FLSA and/or set forth class action claims under the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act..

22.    Mr. Werman is a frequent speaker and author on wage and hour matters, most recently speaking before the National Employment Lawyers Association, the American Bar

Association, the Federal Bar Association, the Chicago Bar Association, the Practicing Law Institute, Bridgeport Continuing Legal Education, the Illinois Institute for Continuing Education and the Regional AFL-CIO's Lawyers Coordinating Committee meeting, all on wage and hour class actions.

23. Mr. Werman is a member of the Board of Editors of the leading treatise on the Fair Labor Standards Act, entitled, "Kearns, *The Fair Labor Standards Act*," published by Bloomberg BNA in conjunction with the American Bar Association Section of Labor and Employment Law. Before being elevated to the Board of Editors in 2016, he was the Senior Chapter Editor of Chapter 20 ("Hybrid" FLSA/State Law Actions) of that same treatise."

24. Zachary C. Flowerree is an associate at Werman Salas P.C. He received his Juris Doctor degree, with honors, in 2011 from the University of Chicago Law School. Mr. Flowerree was admitted to practice law in the State of Illinois on November 10, 2011. Mr. Flowerree is admitted to practice law in the federal district courts for the Northern District of Illinois, Western District of New York and the Southern District of Indiana. Prior to his employment at Werman Salas P.C., Mr. Flowerree billed at the rate of $430.00 per hour with the law firm Winston & Strawn. Within the last two years, Mr. Flowerree has been co-counsel in over sixty (60) matters arising under the FLSA and other state wage and hour laws.

25. Sarah J. Arendt is an associate at Werman Salas P.C. She received her Juris Doctor degree in 2012 from the University of Chicago Law School. She received her Bachelor of Arts degree, *summa cum laude,* in Journalism from the University of Minnesota in 2009. Ms. Arendt was admitted to practice law in the State of Illinois in November, 2012. Ms. Arendt has been co-counsel in over one hundred and twenty (120) matters arising under the FLSA and other state wage and hour laws within the last three years.

26. Jacqueline H. Villanueva, Adriana P. Rodriguez, and Cristina Calderon are paralegals with Werman Salas P.C. All have been employed by Werman Salas P.C. for at least nine (9) years. Ms. Villanueva is also a 2015 graduate of Loyola University School of Law and holds a juris doctor degree.

**My Firm's Timekeeping**

27. The attorneys' fee time sought in this case is recorded and billed as follows: each day I keep a contemporaneous record of the time I work on various projects/files for various clients. This information is kept on a software program — commonly known as "Sage Timeslips 2016" — that is loaded onto a Werman Salas P.C. computer. The Timeslips file created for the instant litigation is named "Piekarski, T" Beginning with my initial consultation with Plaintiff, whenever I or my staff have performed work on behalf of Plaintiff in connection with her action against Defendants, we have made entries in the Timeslip program. These entries consist of a description of the work we performed on the date of the entry as well as the amount of time we spent during the day in performing the work described.

**My Firm's Hourly Rates**

28. My current hourly rate is $500 per hour for hourly paying clients. For example, I recently charged that rate in *Gonzalez v. NBG Delivery Service, Inc., et al.,* Case No. 16-cv-1234 (N.D. Ill.). In that case, the professional and administrative staff in my office bills (or billed) at the following rates: Douglas M. Werman, $600.00; Zachary Flowerree, $400.00, Sarah J. Arendt, $400.00, Jacqueline Villanueva, Cristina Calderon, and Adriana Rodriguez, $150.00. These rates were also billed in the matter *Acuna-Mederos et al. v. Birrieria Reyes De Ocotlan,* Case No. 14 C 6379 (N.D. Ill.). I also charge the rate of $500, and Douglas M. Werman charges the rate of $600, in other hourly matters, including matters pending before administrative agencies,

executive compensation and severance negotiation matters. These rates are within the prevailing market rates in the Chicago area.

29.     Other members of my firm and I have been awarded rates between $300 and $650 per hour by numerous state and federal courts. For example, in deciding a contested fee petition in *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2015 WL 1850599, at *9 (N.D. Ill. Apr. 21, 2015) (Dow, J.), the court awarded me $500/hr, Douglas Werman $600/hr, and paralegals of Werman Salas P.C. $140/hr. The professional and administrative staff of Werman Salas have earned similar rates in other matters. See *Krantz v. D T & C Global Management, LLC,* No. 14-cv-998 (ECF No. 56, 11/23/15) (N.D. Ill.) (awarding Douglas Werman $600/hr; Maureen Salas $500/hr; Zachary C. Flowerree $400/hr; Sarah J. Arendt $300/hr; and Werman Salas, P.C. paralegals $150/hr); *Williams v. Neil's Foods, Inc*., No. 13-2108) (ECF No. 25, 12/19/13) (N.D. Ill.) (awarding Douglas Werman $650/hr; Maureen Salas $500/hr; Sarah Arendt, $275/hr; and Werman Salas, P.C. paralegals $140/hr; *Katcher v. Yagoda*, 11 CH 38659 (Cir Ct. Cook County, 8/28/13)(awarding the following rates on a contested motion for sanctions: Douglas Werman $600/hr, $275/hr Sarah Arendt, and Werman Salas, P.C. paralegals $140/hr); *Nunes v. Chicago Import, Inc*. Case No. 09 C 7168, (N.D. Ill) (ECF No. 189, 9/19/2012) (In which the Court entered a Consent Judgment resolving Plaintiffs' Attorneys' petition for attorney's fees and costs based on an hourly rate for time expended between 2009 and 2012 of $600/hr for Mr. Werman; $475/hr for Maureen A. Salas (2006 Illinois bar member); and $140/hr for paralegals Jacqueline Villanueva, Cristina Calderon, and Adriana Rodriguez.).

30.     Since the inception of the case through July 26, 2016, my firm has worked a total of 891.06 hours on this matter *incurring* more than $359,351.00 in attorney's fees at the rates presented above, allocated between timekeepers as follows:

| TIMEKEEPER | HOURLY RATE | HOURS | TOTAL |
|---|---|---|---|
| Maureen A. Salas | $500 | 549.63 | $274,815.00 |
| Douglas M. Werman | $600 | 63.96 | $38,376.00 |
| Zachary C. Flowerree | $400 | 14.66 | $5,864.00 |
| Sarah J. Arendt | $300 | 5.83 | $1,749.00 |
| Cristina Calderon | $150 | 220.33 | $33,049.50 |
| Adriana Rodriguez | $150 | 14.49 | $2,173.50 |
| Jacqueline H. Villanueva | $150 | 22.16 | $3,324.00 |
| **Total** | | **891.06** | **$359,351.00** |

31.     My firm also incurred $10,495.23 in costs since the inception of this case.

**Plaintiffs' Attorneys Seek a Compromised Amount in Attorneys' Fees**

32.     Plaintiffs' Attorneys seek a compromised amount of attorneys' fees in the amount of $250,000, or approximately a 30% reduction of our calculated loadstar.

33.     These fees were incurred in this complex class action over the course of four years. During the course of the litigation, which has, at times, been contention, the Parties briefed (i) Defendants' motion to transfer or stay the case; (ii) Defendants' motion for a protective order; (3) Plaintiff Piekarski's motion to compel; (4) Plaintiff Piekarski's motion for a protective order relating to Defendant's implementation of a Dispute Resolution Agreement; (5) Defendants' motion for clarification of the Court's May 28, 2013 Order; (6) Defendants' motion for reconsideration of the Court's November 12, 2013 Order; (7) Plaintiff Piekarski's motion to

enforce the Court's November 12, 2013 order, and (8) Defendants' Renewed Motion for Reconsideration of the Court's November 12, 2013 Order.

34.     In addition, Plaintiffs' Attorneys conferred with the Plaintiffs, answered discovery for Plaintiff Piekarski, produced Plaintiff Piekarski for her deposition, issued discovery to Defendants, reviewed Defendants' discovery answers and responsive documents, conferred with Defendants' Counsel over discovery disputes, and prepared a class wide damage model, participated in extensive settlement negotiations, and drafted settlement documents.

35.     Though, consistent with the parties' Settlement Agreement, Plaintiffs are not requesting an Attorneys' Fee award in excess of $250,000, I note that the loadstar we have presented above does not take into consideration time Plaintiffs' Attorneys will spend fulfilling their obligations in the Settlement Agreement, conferring with the Settlement Administrator, monitoring the administration of the Settlement, and responding to Plaintiffs' and Settlement Class members' inquiries.

**Litigation Expenses and Costs**

36.     Plaintiffs' Attorneys also seek to recover $10,495.23 in litigation expenses and costs incurred through July 28, 2016. Plaintiffs' Attorneys seek $9,200 for reimbursement of mediation fees paid to Michael Dickstein.  The remaining $1,295.23 in costs are associated with filing fees, transcript fees, costs associated with Plaintiff's deposition, postage, travel, legal research and photocopies.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true and correct.

Dated:  July 28, 2016

                                                          s/Maureen A. Salas
                                                          Maureen A. Salas